[Civ. No. 44982. Second Dist., Div. Four. July 31, 1975.]

ROWLAND A. SAAL, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
CALIFORNIA STATE UNIVERSITY, LOS ANGELES
et al., Respondents.

292

---

## COUNSEL

Arthur D. Schonfeld and Harvey R. Gerber for Petitioner.

T. Groezinger, James J. Vonk, George S. Bjornsen, Glenn W. Groenewold and Robert A. La Porta for Respondents.

## OPINION

**FILES, P. J.**—Petitioner was a campus policeman employed by the California State University; he became permanently disabled by heart disease in 1973. The issue to be decided is whether the provisions of Labor Code sections 3212-3213 which are applicable to certain other peace officers must be applied for his benefit.[1]

Petitioner had been hired by the California State University and Colleges (formerly the California State Colleges) as a security guard in 1963. About 1971, he was reclassified as a policeman. In both capacities he was a peace officer (Ed. Code, § 24651; Pen. Code, § 830.4, subd. (a)(6)). In the course of his duties he wore a uniform and a badge, carried a pistol and handcuffs, drove a patrol car, directed traffic, controlled crowds, investigated accidents, rendered first aid, maintained surveillance of suspicious persons and made arrests.

In 1971 petitioner suffered an acute heart attack for which he was hospitalized. He returned to work for about four months, until January 1972, when he was again hospitalized. He worked four weeks in April

---

[1]Labor Code section 3212.5 states, in pertinent part:

"In the case of a member of a police department of a city or municipality, or a member of the State Highway Patrol, when any such member is employed upon a regular, full-time salary, and in the case of a sheriff or deputy sheriff, or an inspector or investigator in a district attorney's office of any county, employed upon a regular, full-time salary, the term 'injury' as used in this division includes heart trouble and pneumonia which develops or manifests itself during a period while such member, sheriff, or deputy sheriff, inspector or investigator is in the service of the police department, the State Highway Patrol, the sheriff's office or the district attorney's office, as the case may be . . . .

"Such heart trouble or pneumonia so developing or manifesting itself shall be presumed to arise out of and in the course of the employment; provided, however, that the member of the police department, State Highway Patrol, the sheriff or deputy sheriff, or an inspector or investigator in a district attorney's office of any county shall have served five years or more in such capacity before the presumption shall arise as to the compensability of heart trouble so developing or manifesting itself. This presumption is disputable and may be controverted by other evidence, but unless so controverted, the appeals board is bound to find in accordance with it.

"Such heart trouble or pneumonia so developing or manifesting itself in such cases shall in no case be attributed to any disease existing prior to such development or manifestation."

1972, and in June 1972, he underwent cardiac surgery. At that time a triple aorto-coronary bypass was performed. In August he returned to a desk job until February 13, 1973, when he developed acute dyspnea for which he was re-hospitalized. He has not worked since.

Dr. Winsor reported that petitioner's disease was not related to his occupation in any way. Dr. Dickstein expressed the opinion that petitioner's heart disease was industrially related, in that the stress of his job caused aggravation and acceleration of underlying coronary arterio-sclerosis. The independent medical examiner, Dr. Mills, reported that petitioner was a man pre-disposed to coronary heart disease at an early age, but that the stress of the job "played a role, however small" in accelerating its onset. In Dr. Mills opinion the role of the job situation was "approximately 10%."

The referee found a permanent disability of 73 percent, apportioned 10 percent of it as occupationally related and awarded a disability rating of 7¼ percent.

The board granted petitioner's request for reconsideration and called for additional evidence relevant to petitioner's contention that he was entitled to the benefits of Labor Code sections 3212 and 3212.3. Thereafter, petitioner testified concerning his background and training, his duties as a campus policeman, and the conditions under which he had worked.

The opinion of the board, on reconsideration, commented upon Labor Code section 3213 (effective Mar. 4, 1972) which contains special provisions for certain members of the University of California Police Department whose heart trouble manifests itself during the period of employment. The board said, "We take judicial notice that there are legal and factual differences between the University of California and the California State College system, just as there are similar differences between the State Colleges and the Community Colleges. Therefore, special rules and regulations applying to one do not, ipso facto, apply to another." The board then adopted the findings and award of the referee.

Petitioner has made no contention in this court that the apportionment made by the referee is unsupported by evidence. His contentions are that Labor Code sections 3212 through 3213 should be applied to him, or, if the statutes are not so applied, they amount to "an invidious discrimina-

tion" which the court should remedy under the due process and equal protection clauses of the state and federal Constitutions.

The special provisions of sections 3212-3213 have a long statutory background. Chapter 423 of the Statutes of 1935 amended the Workmen's Compensation Act of 1917 to provide that hernia, developing or manifesting itself during service as a member of certain police or fire departments, was presumed to arise out of and in the course of employment. This provision was carried forward in section 3212 of the Labor Code, adopted in 1937. (Stats. 1937, ch. 90, § 3212, p. 266.)

In 1939 the presumption in section 3212 was extended to "heart trouble" and pneumonia for fire-fighting members of the state Division of Forestry. (Stats. 1939, ch. 256, § 1, p. 1511.)

Also in 1939 the Legislature enacted section 3212.5 creating a presumption with respect to heart trouble and pneumonia for members of the police department of a city or municipality, who had served five years or more in such capacities. (Stats. 1939, ch. 627, § 1, p. 2047.)

In 1943 section 3212.5 was amended to apply to members of the state Highway Patrol. (Stats. 1943, ch. 255 § 1, p. 1168.)

In 1949 section 3212 was extended to state fish and game wardens. (Stats. 1949, ch. 730, § 1, p. 1347.)

1955 amendments extended section 3212 and section 3212.5 to certain members of the sheriff's office. (Stats. 1955, ch. 797, §§ 1, 2, p. 1398.)

In 1957 the Legislature enacted section 3212.6 creating a presumption with respect to tuberculosis for certain city and county police and members of a sheriff's office. (Stats. 1957, ch. 295, § 1, p. 938.)

In 1959 sections 3212 and 3212.5 were amended by the addition of the following language: "Such hernia, heart trouble or pneumonia so developing or manifesting itself in such cases shall in no case be attributed to any disease existing prior to such development or manifestation." (Stats. 1959, ch. 758, §§ 1, 2, p. 2744.)

Also in 1959 the Legislature enacted section 3212.2 creating a presumption with respect to heart trouble for custodial officers and

employees of the Department of Corrections, the Youth Authority and the Atascadero State Hospital. (Stats. 1959, ch. 1155, § 1, p. 3247.)

In 1961 section 3212.7 was enacted, giving to peace officers in the state Bureau of Narcotic Enforcement and the Bureau of Criminal Identification and Investigation a presumption with respect to heart trouble, hernia, pneumonia and tuberculosis, and further providing that such diseases shall in no case be attributed to pre-existing disease. (Stats. 1961, ch. 619, § 1, p. 1777.)

In 1971 sections 3212, 3212.5 and 3212.6 were extended to include district attorneys' investigators. (Stats. 1971, ch. 562, §§ 1, 2, 3, p. 1076.)

Also in 1971 the Legislature enacted section 3213, which created a presumption with respect to heart trouble and pneumonia applicable to "a member of the University of California Police Department who has graduated from an academy certified by the Commission on Peace Officer Standards and Training when he and all members of the campus department of which he is a member have graduated from such an academy . . . ." "Campus" is defined to "include any campus or other installation maintained under the jurisdiction of the Regents of the University of California." This section also prohibited attribution to pre-existing disease. (Stats. 1971, ch. 918, § 1, p. 1801.)

Another 1972 statute added section 3212.4 which created a presumption with respect to heart trouble, hernia and pneumonia for members of University of California campus fire departments, and forbade attributing any such condition to pre-existing disease. (Stats. 1972, ch. 1149, § 1, p. 2243.)

Also in 1972 section 3212.3 was enacted, giving members of the California State Police the benefit of a presumption with respect to heart trouble and pneumonia, as well as nonattribution to pre-existing disease. (Stats. 1972, ch. 1360, § 1, p. 2709.)

Commentators have suggested that the distinctions which appear in that series of enactments reflect only the Legislature's response to recurring demands by particular groups. (See 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, § 6.03 [3] [d], p. 6-16, fn. 18; Comment (1971) 2 Pacific L.J. 678, 696; Comment (1974) 7 U.C. Davis L.Rev. 24, 35-36.)

Beyond question, these statutes show a purpose of the Legislature to provide additional benefits for certain public employees whose services are both vital to the public interest and hazardous. (See *Turner* v. *Workmen's Comp. App. Bd.* (1968) 258 Cal.App.2d 442, 447 [65 Cal.Rptr. 825]; *State Employees' Retirement System* v. *Workmen's Comp. App. Bd.* (1968) 267 Cal.App.2d 611, 617 [73 Cal.Rptr. 172]; *Smith* v. *Workmen's Comp. Appeals Bd.* (1975) 45 Cal.App.3d 162, 166 [119 Cal.Rptr. 120].)

All of the persons benefitted are in the general fields of law enforcement or firefighting, but by no means are all public employees in that field included. A casual review of the classes of peace officers listed in Penal Code sections 830.1 through 830.12 indicates that, depending on how the respective classifications in the Penal and Labor Codes are interpreted, there are somewhere between 26 and 34 kinds of peace officers who are not benefitted at all by any of the sections in the 3212-3213 series.

It has been said that the provisions with respect to heart trouble are a recognition that such disease is caused or aggravated by stressful work. (See *Stephens* v. *Workmen's Comp. Appeals Bd.* (1971) 20 Cal.App.3d 461, 467 [97 Cal.Rptr. 713].) But the correlation between occupational stress and heart trouble does not explain why fish and game wardens and University of California campus police have the benefit of the nonattribution rule, while correctional officers in the state prisons do not. (See Labor Code, §§ 3212, 3212.2, 3213.)

There is even greater difficulty in understanding why the special benefits for hernia, pneumonia and tuberculosis are granted to some employees and not to others.

For the purpose of analysis it is useful to notice that sections 3212 through 3213 confer two distinct kinds of benefits.[2] The first kind is a disputable presumption that a particular disease developing or manifesting itself during the period of employment arises out of and in the course and scope of employment. This serves to improve the probability that a person suffering from such a disease will be able to prove his claim. But the presumption does not purport to give to a member of the favored class a substantive benefit which is not available to any other applicant for compensation who is able to produce persuasive evidence that his disease was industrially caused.

[2]For the text of section 3212.5, see footnote 1.

The other benefit is the provision for nonattribution, which gives to the favored class a measure of compensation which is not granted to other applicants.

Under this nonattribution rule, if an employee's disability because of heart trouble is caused in part by his work, his award is not subject to apportionment for pre-existing disease. (*Turner* v. *Workmen's Comp. App. Bd., supra,* 258 Cal.App.2d at p. 447.) Such an employee thus is given a benefit in excess of that awarded to a person in another kind of employment, whose medical history and disability are in other respects identical.

Petitioner here is not hurt by the absence of a presumption, because the medical evidence supported a finding of a work-related disability. But since the evidence also showed that the greater part of his disability was the natural outcome of a pre-existing nonoccupational disease, his award was smaller than that which would be given to him if he had been one of those covered by a nonattribution statute.

The additional compensation authorized by the nonattribution rule is a part of the total economic reward for certain positions in public employment. It is a kind of extra compensation which the Legislature has seen fit to provide for specified employees.

 However obscure the Legislature's reasons may be for selecting the particular employments which are to receive the extra compensation, the statutes show clearly enough that petitioner's employment was not one of them. He was not a member of the police department of a city, county, district or other public corporation or political subdivision. (§ 3212.5.) He was not "a member of the California State Police" (§ 3212.3). The nearest analogy to his kind of employment appears to be that of the University of California police, but his employment differed from the terms of section 3213[3] in these respects:

---

[3]Labor Code section 3213 states, as follows:

"In the case of a member of the University of California Police Department who has graduated from an academy certified by the Commission on Peace Officer Standards and Training, when he and all members of the campus department of which he is a member have graduated from such an academy, and when any such member is employed upon a regular, full-time salary, the term 'injury' as used in this division includes heart trouble and pneumonia which develops or manifests itself during a period while such member is in the service of such campus department of the University of California Police Department. The compensation which is awarded for such heart trouble or pneumonia

(1) He was employed by the State University and Colleges, not the University of California. The two institutions are entirely separate and distinct and are managed by different boards. (See Cal. Const., art. IX, § 9; Ed. Code, §§ 22600, 23604, 24201 et seq.) His place of employment was not on a campus or other installation of the University of California, as is required by section 3213.

(2) Section 3213 also requires that the employee and all other members of his department have graduated from an academy certified by the [California] Commission on Peace Officer Training and Standards. Petitioner received some training at a police academy in Illinois, and there is no evidence regarding what academy, if any, trained the other members of his department.

It is petitioner's contention that these differences are immaterial, and that the only material fact is that he, like the members of the University of California Police Department, serve as peace officers upon a university campus. His case is that an employment benefit conferred by law upon a member of the other university's police department must be conferred upon him.

That simplistic approach is an adequate ad hoc explanation for granting him what he asks, but it ignores some larger problems. Petitioner's theory not only defies the clearly expressed intent of the Legislature, it also assumes, as its major premise, that an economic benefit which the Legislature confers upon one group of public employees must, as a matter of constitutional law, be made available to

shall include full hospital, surgical, medical treatment, disability indemnity, and death benefits as provided by the provisions of this division.

"Such heart trouble or pneumonia so developing or manifesting itself shall be presumed to arise out of and in the course of the employment; provided, however, that the member of the University of California Police Department shall have served five years or more in such capacity before the presumption shall arise as to the compensability of heart trouble so developing or manifesting itself. This presumption is disputable and may be controverted by other evidence, but unless so controverted, the appeals board is bound to find in accordance with it.

"Such heart trouble or pneumonia so developing or manifesting itself in such cases shall in no case be attributed to any disease existing prior to such development or manifestation.

"As used in this section:

"(a) 'Members'. shall be limited to those employees of the University of California Police Department who are defined as peace officers in Section 830.2 of the Penal Code.

"(b) 'Campus' shall include any campus or other installation maintained under the jurisdiction of the Regents of the University of California.

"(c) 'Campus department' means all members of the University of California Police Department who are assigned and serve on a particular campus."

another public employee who is able to persuade the appropriate tribunal that his employment is comparable.

■ In enacting a workers' compensation law, the Legislature has broad power to classify employees in relation to the benefits provided. "It is the duty of the Legislature to determine whether the facts justify such a classification and the burden of the challenger to show that the legislative conclusion is arbitrary. [Citation.] . . . ■ 'Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond a rational doubt erroneous.'" (*Mathews* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719, 738-739 [100 Cal.Rptr. 301, 493 P.2d 1165].)

This same broad power of classification, and the presumption in favor of the Legislature's exercise of its discretion, apply to other laws governing the terms and conditions of public employment. (See *California State Employees' Assn.* v. *Flournoy* (1973) 32 Cal.App.3d 219, 236 [108 Cal.Rptr. 251]; *City of San Diego* v. *American Federation of State etc. Employees* (1970) 8 Cal.App.3d 308, 316 [87 Cal.Rptr. 258]; *Hutton* v. *Pasadena City Schools* (1968) 261 Cal.App.2d 586, 592 [68 Cal.Rptr. 103]. See also, *Ohio Municipal Judges Assn.* v. *Davis* (1973) 411 U.S. 144 [36 L.Ed.2d 113, 93 S.Ct. 1245], affd. 57 F.R.D. 64.)

■ Petitioner has pointed to no authority which requires the state to fix the benefits of his employment by reference to the benefits received by some other group of peace officers in the state. The legislative history of sections 3212-3213 shows that the Legislature has proceeded step-by-step in conferring additional benefits upon certain peace officers with respect to certain employment hazards. This does not justify petitioner's demand that, by judicial amendment, his employment benefits shall be measured by what is paid to others employed elsewhere.

The award is affirmed.

Dunn, J., and Cole (J. L.), J.,* concurred.

*Assigned by the Chairman of the Judicial Council.