[L.A. No. 30848. Dec. 15, 1977.]

PASADENA UNIFIED SCHOOL DISTRICT,
Plaintiff and Appellant, v.
COMMISSION ON PROFESSIONAL COMPETENCE et al.,
Defendants and Respondents;
SULOCHNA BEDI, Real Party in Interest and Respondent.

## COUNSEL

John H. Larson, County Counsel, and Donovan M. Main, Deputy County Counsel, for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

Schwartz, Steinsapir, Dohrmann & Krepack and Richard D. Sommers for Real Party in Interest and Respondent.

## OPINION

**BIRD, C. J.**—Appellant, the Pasadena Unified School District, appeals from a superior court judgment which denied the district's petition for a writ of mandate to set aside the decision of a Commission on Professional Competence.[1] The commission had found that the district had violated its own procedures and for that reason lacked cause to dismiss respondent, Sulochna Bedi, from her position as a public school teacher. The Superior Court of Los Angeles County reached the same conclusion. This court affirms, since the factual findings of the superior court are supported by substantial evidence.

---

[1] Education Code section 44944, subdivision (b), provides for the appointment of a three-member Commission on Professional Competence to conduct a hearing to determine whether cause exists for a school district to dismiss a public school employee. The State Office of Administrative Procedure appoints one member, a hearing officer who chairs the hearing; the governing board of the district selects a second member; and the employee chooses a third. The latter two members must hold currently valid teaching credentials and must have at least five years' experience in employee disciplinary matters within the last ten years.

Unless otherwise indicated, all statutory references hereinafter are to the Education Code as reorganized effective April 30, 1977. Below is a table of identical former sections

## I

In 1972, the district hired Sulochna Bedi as a certificated probationary employee[2] to teach educationally handicapped children at the Roosevelt School. The next two school years were marked by periodic friction between Bedi and two of her supervisors. In February 1974, Bedi requested a transfer to another school. She met in May 1974 with an acting assistant superintendent of the district who indicated that Bedi would be transferred to the Noyes Primary School in the fall.

On September 10, 1974, the superintendent of the district informed Bedi that she was not being transferred to Noyes School but to an educationally handicapped class at the McKinley Junior High School. After visiting the school,[3] Bedi wrote the board of education that her transfer was unacceptable and involuntary. Her letter pointed out that she was not notified of the transfer until September 10th, contrary to the district's policy that teachers must receive notice of involuntary transfers by the previous May 15th.[4]

Between September 16th and October 11th, Bedi regularly made telephone calls to the district to indicate that she would be absent from work because of illness. Thereafter, she made no further telephone calls because she believed that the board was reviewing her assignment. This belief was based on representations made by the board to her lawyer at a meeting on October 1st. ██ However, on November 26th,

---

which were operative at the time of the instant controversy.

| Present section | Former section |
|---|---|
| 35035 | 939 |
| 44882 | 13304 |
| 44915 | 13334 |
| 44932 | 13403 |
| 44939 | 13408 |
| 44944 | 13413 |
| 44945 | 13414 |
| 44948 | 13442 |

[2]Generally, a teacher is on probationary status during the first three years of employment. (See §§ 44882 and 44915; *Turner* v. *Board of Trustees* (1976) 16 Cal.3d 818, 822 [129 Cal.Rptr. 443, 548 P.2d 1115].)

[3]During the visit, she discovered that her classroom was isolated from the rest of the school. A staff psychologist also informed her that her assignment was probably one of the most difficult in the district.

[4]The district's written employment policy specified that except in emergencies teachers must be notified of involuntary transfers no later than May 15th. (Pasadena Unified School District Certificated Employees Handbook (1973-74) § 5224, subd. (B).)

the school board decided to dismiss Bedi.[5] When served with the board's charges, Bedi demanded a hearing before a Commission on Professional Competence on her dismissal.

About a year later, following two hearings on the matter,[6] the commission decided that the district had no grounds to dismiss Bedi. The district petitioned the superior court for a writ of mandate to set aside the commission's decision. After independently reviewing the complete record of the commission's proceedings, the superior court judge agreed with the commission that the district had not complied with its own involuntary transfer procedures. This determination was based on a finding (identical to that of the commission) that the district had failed to establish the existence of an emergency at the time of Bedi's transfer. Under the district's own policy, only the existence of an emergency would excuse the district's failure to notify Bedi before May 15th of the involuntary transfer. (See fn. 4, *ante.*)

## II

The decision of a Commission on Professional Competence may be challenged in superior court by means of a petition for a writ of

[5]The board prepared the following written statement of charges against Bedi: "1. Persistent and willful refusal to perform regular assignments without reasonable cause, 2. Willful and persistent refusal to obey the school laws of the State and reasonable regulations prescribed for the government of the public schools by the governing board of the school district employing her, and 3. Evident unfitness for service."

The board apparently formulated these charges based on the language of sections 44932 and 44939. Section 44932 authorizes dismissal for "[e]vident unfitness for service" (§ 44932, subd. (e)) and for "[p]ersistent violation of or refusal to obey the school laws of the state or reasonable regulations prescribed for the government of the public schools by the State Board of Education or by the governing board of the school district employing him." (§ 44932, subd. (g).)

Although section 44932 by its terms refers only to permanent employees, the statute also applies to dismissals of probationary employees that occur during the school year. (See § 44948; *Titus* v. *Lawndale School Dist.* (1958) 157 Cal.App.2d 822, 827 [322 P.2d 56]; *Lunderville* v. *Emery Unified Sch. Dist.* (1968) 262 Cal.App.2d 459, 463 [68 Cal.Rptr. 768].)

Section 44939, which also refers by its terms only to permanent employees, authorizes suspension and dismissal for ". . . willful refusal to perform regular assignments without reasonable cause, as prescribed by reasonable rules and regulations of the employing school district. . . ."

[6]The commission first heard the matter in early 1975 and decided in Bedi's favor. The district then successfully petitioned the superior court for a writ of mandate directing the commission to set aside its decision and to make further findings and/or to take further evidence. Pursuant to the writ, the commission conducted a second hearing on the matter in November 1975. After making additional findings, it rendered a second decision in Bedi's favor.

mandate. (See § 44945; Gov. Code, § 11523; Code Civ. Proc., § 1094.5.) In reviewing a commission's decision, the superior court "shall exercise its independent judgment on the evidence." (§ 44945.) ■ Where a superior court is required to make such an independent judgment upon the record of an administrative proceeding, the scope of review on appeal is limited. An appellate court must sustain the superior court's findings if substantial evidence supports them. (*Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308-309 [196 P.2d 20]; *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 71-73 [64 Cal.Rptr. 785, 435 P.2d 553]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242]; *Harlow* v. *Carleson* (1976) 16 Cal.3d 731, 739 [129 Cal.Rptr. 298, 548 P.2d 698].) In reviewing the evidence, an appellate court must resolve all conflicts in favor of the party prevailing in the superior court and must give that party the benefit of every reasonable inference in support of the judgment. When more than one inference can be reasonably deduced from the facts, the appellate court cannot substitute its deductions for those of the superior court. (*Moran* v. *Board of Medical Examiners, supra,* 32 Cal.2d at p. 308.)

■ In the present case, the key finding of the superior court was that no emergency existed at the time of Bedi's transfer. Absent an emergency, the district violated its own policy by not notifying Bedi before May 15th of the involuntary transfer. (See fn. 4, *ante.*) Education Code section 35035, subdivision (d), provides that when a school district adopts a policy concerning transfers of teachers, the superintendent has authority to transfer teachers "consistent with such policy." If in seeking to transfer Bedi, the superintendent acted contrary to district policy, the transfer order was invalid. (See *Hamilton* v. *Stockton Unified Sch. Dist.* (1966) 245 Cal.App.2d 944, 950 [54 Cal.Rptr. 463]; *Frates* v. *Burnett* (1970) 9 Cal.App.3d 63, 71 [87 Cal.Rptr. 731].) ■ ■ The district does not contend that Bedi's refusal to obey an invalid transfer order could be grounds for her dismissal.[7] ■ Thus, the question before this court is whether the evidence, viewed in the light most favorable to Bedi, reveals substantial support for the finding that no emergency existed.

---

[7] "'Insubordination can be rightfully predicated only upon a refusal to obey some order which a superior officer is entitled to give and entitled to have obeyed.' (*Garvin* v. *Chambers* (1924) 195 Cal. 212, 224 [232 P. 696]; *Sheehan* v. *Board of Police Comrs.* (1925) 197 Cal. 70, 78 [239 P. 844]; *Forstner* v. *City & County of San Francisco* (1966) 243 Cal.App.2d 625, 632 [52 Cal.Rptr. 621].)" (*Parrish* v. *Civil Service Commission* (1967) 66 Cal.2d 260, 264 [57 Cal.Rptr. 623, 425 P.2d 223].)

The evidence relevant to the existence of an emergency centered around the troubled relations between Bedi and her supervisors. Bedi testified that Simmons, the principal, had been hostile to her from the beginning of her employment at Roosevelt School in 1972. At that time, Simmons assigned Bedi to instruct the older of two available groups of students despite her expressed preference to teach younger children. In 1973, Welch, Bedi's departmental supervisor, told her that the administration would "get [her] out" of the program the following year.

In early 1974, Bedi requested a voluntary transfer to another school because of alleged harassment by Simmons and Welch. She also filed a complaint with the Fair Employment Practices Commission charging that these two supervisors were discriminating against her on the basis of her national origin. A copy of that complaint was served in April on an acting assistant superintendent. In May, Bedi met twice with that official, who told her there would be no difficulty transferring her, as she wished, to the Noyes Primary School. She then withdrew her Fair Employment Practices Commission complaint.

In late June, Simmons demoted Bedi from a teacher to a teaching aide. According to Bedi's uncontradicted testimony, one of Simmons' stated reasons for this demotion was Bedi's complaint to the Fair Employment Practices Commission. It was not until September 10th that Bedi was informed of her transfer to the McKinley School. Three days later, she notified the district that the transfer was involuntary.

From this course of events, it appears that the friction between Bedi and her superiors had existed for a long time prior to her involuntary transfer. Therefore, even if the term "emergency" encompassed conflicts between teachers and their superiors rather than being limited to matters which generally affect the operations of the district,[8] it was reasonable for the superior court to conclude that this particular situation never constituted an emergency. Bedi's request for a transfer in February 1974 and her discrimination complaint in April put the district on notice of the situation before the May 15th deadline for notifying her of an involuntary transfer. The district did not transfer her until almost four months after that deadline. Viewing the record in the light most favorable to Bedi and giving her the benefit of all reasonable inferences, this court finds substantial evidence to support the superior court's

[8] The district's policy handbook provides no definition of the term "emergency." The district is not precluded from setting forth its own definition of this term.

determination that no emergency existed at the time of her involuntary transfer.[9]

Accordingly, the superior court properly ruled that the district had violated its own policy and correctly denied the district's petition for a writ of mandate. The decision of the Commission on Professional Competence that the district lacked cause to dismiss respondent must stand. The judgment is affirmed.

Tobriner, J., Mosk, J., Clark, J., Richardson, J., Manuel, J., and Newman, J., concurred.

---

[9]The district contends that the evidence establishes the existence of "some sort of educational emergency . . . at Roosevelt School." However, the reviewing court's role is not to determine which of two competing conclusions is better sustained by the evidence. (*Moran* v. *Board of Medical Examiners, supra,* 32 Cal.2d at p. 308; *Yakov* v. *Board of Medical Examiners, supra,* 68 Cal.2d at p. 72.) Here, the superior court's determination that no emergency existed, supported as it is by substantial evidence, may not be disturbed on appeal.