[Civ. No. 44991. First Dist., Div. One. Feb. 11, 1980.]

EMANUEL BECHTEL, Plaintiff and Appellant, v.
BOARD OF RETIREMENT OF CONTRA COSTA COUNTY
EMPLOYEES' RETIREMENT ASSOCIATION, Defendant and
Respondent.

COUNSEL

William L. Veen and Clark G. Leslie for Plaintiff and Appellant.

John B. Clausen, County Counsel, and Elizabeth B. Hearey, Deputy County Counsel, for Defendant and Respondent.

OPINION

**GRODIN, J.—**

### STATEMENT OF THE CASE

Emanuel Bechtel, a building inspector for the County of Contra Costa, became permanently incapacitated for the performance of duty in 1975, at age 57, and applied for retirement benefits from the Contra Costa County Employees Retirement Association (CCCERA), pursu-

ant to the County Employees Retirement Law of 1937. (Gov. Code, § 31450 et seq.) Bechtel applied for service-connected disability retirement benefits on the ground that his incapacity was "a result of injury or disease arising out of and in the course of his employment." (Gov. Code, § 31720, subd. (a).) The CCCERA Board of Retirement, upon the recommendation of a hearing officer, found to the contrary and denied his application. The board also denied Bechtel's claim for payment of fees for the expert witnesses who testified on his behalf. Bechtel sought judicial review of the board's action through petition for writ of administrative mandate. (Code Civ. Proc., § 1094.5.) The Contra Costa County Superior Court denied the writ and entered judgment accordingly. This appeal is from that judgment.

THE EVIDENCE

On May 21, 1975, while he was preparing to go to work, Bechtel suffered a myocardial infarction (heart attack). Diagnosis revealed that he was suffering from arteriosclerotic disease of the coronary arteries and aortic bypass surgery was performed. It is undisputed that Bechtel became permanently incapacitated for the performance of duty as a result of that arteriosclerotic disease. The question in dispute is whether that disease arose "out of and in the course of his employment" within the meaning of Government Code section 31720, subdivision (a).

Bechtel sought to convince the referee that his arteriosclerotic disease was causally related to the pressures and stress of his employment. He testified that his job was stressful in a variety of ways: long hours; necessity for bringing work home; business calls at home; long drives, frequently in hot weather, to make site inspections; political pressures associated with code enforcement; requirements for testimony in court and the like. In August 1971 he experienced severe chest pains and vision difficulty while on the job during a hot day, and he was taken to a hospital where tests were performed to determine whether he had suffered a myocardial infarction. The tests proved negative and he was released to return to work. During the next several months he experienced chest pains, frequently while at work and under stress. He became nervous, short-tempered, apprehensive, and experienced insomnia and nightmares. The myocardial infarction occurred the morning of May 21, 1975, while Bechtel was preparing to go to work. Bechtel testified that two weeks prior to his heart attack he was notified that he would have to testify in court in connection with certain litigation, and

that he was apprehensive about his court appearance as a result of arguments with his supervisor as to what he should say.

Three physicians testified in support of Bechtel's theory of the case. Dr. Robert Riopelle, a psychiatrist who examined Bechtel, made reference to the "now well-established" proposition that emotional stress is strongly linked to "vasoconstriction and transient vascular occlusions, and it is to be expected that such events frequently determine the time and place at which an occlusive infarction occurs." Listing various emotional stresses which Bechtel had experienced on his job, Dr. Riopelle concluded that "[t]he chronic and acute stress Mr. Bechtel was experiencing at his work situation probably contributed considerably to the rate of development of his cardiovascular disease, and to his myocardial infarction." Dr. Raymond Weisberg, an internist who examined Bechtel, testified to the same effect. And Dr. Jacques Chahin, who treated appellant in 1971 and saw him again in July of 1975, submitted a report to the effect that "his coronary artery disease has been certainly aggravated by the extreme anxiety and psychological stress resulting from the type of work that he performs."

Respondent, to counter Bechtel's theory, submitted the reports and testimony of two physicians. Dr. William Breall, a cardiologist, expressed the opinion that Bechtel's condition was attributable to hereditary and environmental factors having nothing to do with his work, and that work stress contributed nothing to his condition. Referring to Dr. Chahin's report, Dr. Breall stated that when he spoke to Mr. Bechtel "I was not under the impression that his job caused 'extreme anxiety and psychological stress' to a greater degree than any other job earning capacity might have caused in this individual." Dr. Carroll Brodsky, a psychiatrist who examined Bechtel, expressed the view that Mr. Bechtel had "a long history of emotional problems which manifested themselves in his need and use of excessive quantities of alcohol," and suggested that a "careful reading of Dr. Breall's report will provide as much of an answer as is available," to the question of relationship between Bechtel's job and his heart disease. The hearing officer recommended against service-connected status, stating in part: "I . . . wish to emphasize that I have not found it necessary to choose between the two conflicting medical theories advanced by the expert witnesses. I have merely determined that, assuming that the evidence supports the stress theory of causation or aggravation of arteriscleriotic disease generally, the evidence in this case does not support its application to Mr. Bech-

tel's situation. I found the testimony of Dr. Breall, the only cardiologist who testified personally, to be persuasive in this regard."

## DISCUSSION

Bechtel's principal contention is that the board of retirement abused its discretion in finding that his disability was not work-related on the ground that this finding is not supported by the evidence. (Code Civ. Proc., § 1094.5, subd. (b).) The parties are in agreement that the decision of the board substantially affected a fundamental vested right, and that the function of the trial court was therefore to exercise its independent judgment in determining whether the findings are supported by the weight of the evidence. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32, 45 [112 Cal.Rptr. 805, 520 P.2d 29]; Code Civ. Proc., § 1094.5, subd. (c).) In *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308-309 [196 P.2d 20], the Supreme Court held that in such a case the scope of appellate review is limited to determining whether the findings of the *trial court* are supported by substantial evidence, viewing the evidence in the light most favorable to the findings. While the *Moran* rule has been criticized by some commentators (e.g., 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 261-263, pp. 4251-4255), and by some judicial opinions (e.g., *Lacy* v. *Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1135, fn. 2 [95 Cal.Rptr. 566]), it has been reaffirmed on numerous occasions (e.g., *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 72 [64 Cal.Rptr. 785, 435 P.2d 553]; *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 916 [80 Cal.Rptr. 89, 458 P.2d 33]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 149 [93 Cal.Rptr. 234, 481 P.2d 242]; *Strumsky* v. *San Diego County Employees Retirement Assn., supra*, 11 Cal.3d at p. 46, fn. 18; *Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 697 [139 Cal.Rptr. 700, 566 P.2d 602]; *Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence* (1977) 20 Cal.3d 309, 314 [142 Cal.Rptr. 439, 572 P.2d 53]), and we are bound to follow it. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].) Since in this case findings of fact were not requested and, thus, were waived (Code Civ. Proc., § 632), findings in favor of the respondent must be implied (*Gray* v. *Gray* (1921) 185 Cal. 598, 599 [197 P. 945]), and since the trial court (as well as the board of retirement) acted solely on the basis of evidence presented to the referee and produced no indication as to its independent views, if any, we will assume

that the referee's findings were impliedly adopted. The question presented, therefore, is whether there exists substantial evidence to support these findings. (Cf. *Childers v. Childers* (1946) 74 Cal.App.2d 56, 59 [168 P.2d 218].)

Bechtel acknowledges that it was his burden to prove that there was stress at his employment, and that this stress contributed to the myocardial infarction that disabled him. He asserts that he established a prima facie case to that effect through his own testimony and the opinion of his experts, and we agree. Government Code section 31720, subdivision (a) does not require that a worker's employment be the sole or substantial cause of disability before an award may be made. (*Heaton v. Marin County Employees Retirement Bd.* (1976) 63 Cal.App.3d 421, 432 [133 Cal.Rptr. 809].) The evidence contrary to Bechtel's case consisted in the opinions expressed by Drs. Brodsky and Breall. Dr. Brodsky's opinion, however, does no more than summarize the opinions expressed by others and defer to the opinion of Dr. Breall; and the referee stated that it was Dr. Breall's testimony that he found to be persuasive. The key question on appeal, therefore, narrows to whether Dr. Breall's opinion and testimony provide adequate basis for rejecting the evidence which favored Bechtel's theory of causality.

Bechtel argues that as a matter of law, Dr. Breall's testimony should be accorded little if any weight because Dr. Breall rejects the "stress theory" which is at the heart of appellant's case, and which has been "accepted" by both the Legislature and the courts. It is true that the Legislature has provided with respect to certain categories of employees ("safety" members, "fireman" members, and members in active law enforcement) a presumption that any "heart trouble" is work-related. (Gov. Code, § 31720.5.) Comparable presumptions have been established under the Workers' Compensation Act (Lab. Code, §§ 3212-3213) for the very purpose of meeting the problem which inevitably arises from the battle between experts who disagree over the stress theory. (*City and County of San Francisco v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 103, 108-109 [148 Cal.Rptr. 626, 583 P.2d 151].) "In light of the division in medical theory on this crucial issue, the Legislature thus faced a situation in which the fate of an individual worker's claim generally did not turn on the facts of his particular employment or heart attack, but rather was decided almost fortuitously, on the basis of which of the two competing schools of medical thought *the lay referee or appeals board* decided to endorse in the particular case."

(*Id.*, at p. 110; see also Note, *Workmen's Compensation—Diseases Arising Out of Employment—A Problem of Proof* (1971) 2 Pacific L.J. 678.) And it has been held that the statutory presumption, while rebuttable in a particular case, cannot be rebutted by the testimony of a physician who refused to accept the legislative premise that stress and tension do cause heart trouble. (*Stephens* v. *Workmen's Comp. Appeals Bd.* (1971) 20 Cal.App.3d 461, 468 [97 Cal.Rptr. 713].)

These statutory presumptions, however, are limited to particular categories of employees (*Saal* v. *Workmen's Comp. Appeals Bd.* (1975) 50 Cal.App.3d 291 [123 Cal.Rptr. 506]); and the *Stephens* rationale has no application where the presumption itself does not apply. (*Hamilton* v. *Workers' Comp. Appeals Bd.* (1979) 93 Cal.App.3d 587, 594 [155 Cal.Rptr. 721].) The problem arising out of the battle of experts in this arena continues to exist for employees not covered by the statutory presumptions; and while that situation may well be incongruous, it is nevertheless within the scope of constitutional legislative prerogative. (*Saal* v. *Workmen's Comp. Appeals Bd., supra.*)

We cannot say, therefore, that Dr. Breall's testimony should be disregarded solely because he does not subscribe to the stress theory. There remains, however, the question whether his testimony supports the referee's finding (impliedly adopted by the trial court) that Bechtel's disability was not work-related "assuming that the evidence supports the stress theory of causation or aggravation of arteriosclerotic disease generally." We have examined Dr. Breall's testimony carefully, and we find in it nothing which purports to deal with Bechtel as an individual or with the particular requirements of his job as related to the development of his disease.[1] We conclude, therefore, that this finding is not supported by substantial evidence. Since the referee expressly declined to choose between the two conflicting medical theories advanced by the expert witnesses, we cannot determine whether the referee or the board would have denied Bechtel's application on the basis of Dr. Breall's medical theory alone. We conclude, therefore, that the case should be remanded to the board of retirement for determination of its position on that issue.

---

[1]Asked why he had not dealt specifically with such factors in his report, Dr. Breall testified: "As I stated before in my opinion, there is no relationship between work aggravation and emotional factors and the production of coronary atherosclerosis. Therefore, I never mentioned them." It seems clear that Dr. Breall based his conclusions upon a medical hypothesis which rejects the stress theory generally. If the stress theory is assumed to be correct, then there is nothing in Dr. Breall's testimony which

Bechtel complains also of the board's denial of his request for payment of Dr. Riopelle's fees as an expert witness. At the time the issue in dispute first arose, the board furnished Bechtel a copy of its hearing procedures, and those provided in part that "It is the Board's policy to order payment of...expert witness fees if such testimony or evidence was of significant value to the Board or Referee in reaching its decision; except that (1) if the Board finds that the witness's attendance was clearly unnecessary or that his testimony was wholly irrelevant or cumulative, it may decline to order payment of fees...." Between that time and the date of the administrative hearing, however (approximately one year later) the board adopted a new regulation concerning witness fees, and this provided: "It is the Board's policy *not* to pay fees for witnesses called by the applicant unless the Board finds that the testimony was of significant value to the Board or Referee in reaching its decision or that unusual circumstances surrounding the testimony justify the payment. The Referee shall make recommendations to the Board concerning such value, circumstances, and amount." (Italics added.) Bechtel was not notified of the change. The referee, on the basis of the new rule, recommended against payment of Dr. Riopelle's fees on the ground that his testimony was not "of such significant value that the Board ought to set aside its usual policy not to pay such fees."

Bechtel argues that he was denied a fair hearing on the issue of payment for Riopelle's testimony in that he was denied his right to notice of the board's new policy. We do not agree. Bechtel was represented by an attorney at the hearing, and he had a duty to inform himself as to applicable law. (Cf. *Smith* v. *Lewis* (1975) 13 Cal.3d 349, 358 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231]; *Wright* v. *Williams* (1975) 47 Cal.App.3d 802, 809 [121 Cal.Rptr. 194].) There is, moreover, no showing of prejudice resulting from lack of notice of the

---

precludes its application to Bechtel's condition. Dr. Breall testified as follows concerning Dr. Chahin's report: "Dr. Chahin seems to imply that Mr. Bechtel is a Type A behavior pattern. I found no evidence when I examined him that he was, indeed, a Type A behavior pattern. I found no evidence in watching him today that he manifested any characteristics of a Type A behavior pattern. Now, it may have been that he was a Type A behavior pattern before he became ill. As I pointed out previously, individuals who become ill may change." And although Dr. Breall stated that when he examined Bechtel he found no evidence of extreme anxiety or psychological stress, he nevertheless conceded on cross-examination: "Now, I'll have to again qualify this by saying that I didn't see him on the job." An expert opinion does not constitute substantial evidence on which the board may rest its decision when that opinion is based upon surmise, conjecture, or inadequate medical examinations. (*Place* v. *Workmen's Comp. Appeals Bd.* (1970) 3 Cal.3d 372, 378 [90 Cal.Rptr. 424, 475 P.2d 656].)

change. We conclude, therefore, that Bechtel's contention with respect to expert witness fees is without merit.[2]

The judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Elkington, Acting P. J., and Newsom, J., concurred.

---

[2]This conclusion is of course without prejudice to Bechtel's right to seek reconsideration of that issue pursuant to the remand provided for in our disposition of the case.