[No. H009429. Sixth Dist. Nov. 19, 1992.]

JAMES MACHADO, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

## COUNSEL

Jeffrey H. Hancock for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Cathy Christian, Ramon M. de la Guardia and Tom Reilly, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**PREMO, J.**—Appellant James Machado's driver's license was suspended by the Department of Motor Vehicles (hereafter, DMV) on the ground that he failed to submit to chemical testing following his arrest for driving under the influence of alcohol. (Veh. Code, §§ 23157, 13353.)[1] At appellant's request, an administrative hearing was held on the propriety of the suspension. Appellant claimed he was not the driver at the time of the arrest and therefore was not required to submit to a test. The hearing officer found that appellant was the driver at the time in question and affirmed the suspension.

Appellant then filed a petition for a writ of mandate with the Santa Cruz County Superior Court. The court concluded that the hearing officer's finding that appellant was the driver was not supported by substantial evidence, but nevertheless upheld the suspension. The court held that the implied consent law set forth in section 13353 only requires that an officer have probable cause to arrest for driving under the influence before submission to chemical testing is mandatory. In reaching this conclusion, the court relied on *Rice* v. *Pierce* (1988) 203 Cal.App.3d 1460 [250 Cal.Rptr. 832], which so holds. On appeal, appellant asks us to follow the case of *Jackson* v. *Pierce* (1990) 224 Cal.App.3d 964 [274 Cal.Rptr. 212], which holds, contrary to *Rice*, that the DMV must prove that a person was actually driving a vehicle in order to justify suspension of the person's license for failing to submit to chemical testing under the implied consent law.

### FACTS

In the early morning hours of May 27, 1991, Officer Boyd of the California Highway Patrol (hereafter, CHP) came across a vehicle stuck on some railroad tracks. Appellant and four passersby who had stopped to help him were attempting to remove it from the tracks. When Officer Boyd approached the group to ascertain what was going on, appellant told him that his girlfriend had been driving his car and had somehow managed to get it

---

[1]Further statutory references are to the Vehicle Code unless otherwise noted.

stuck on the tracks, and that he was trying to move it so it would not be hit by a train. Appellant told the officer the woman who had been driving, whom he called by several different names, had become angry with him after the accident and had walked home. The passersby told Officer Boyd that appellant was not in the car when they happened by, and that he had told them the same story when they stopped and offered to help him.

Appellant was noticeably drunk. After noting inconsistencies in appellant's statements with respect to when the alleged woman who had been driving had left the scene, what her name was, and where she and defendant had been, the officer suspected that, in fact, appellant had been driving his car when it became stuck on the tracks. After appellant failed field sobriety tests, Officer Boyd arrested him for drunk driving. (§ 23152.) Appellant refused to submit to chemical testing, claiming that he had not been driving the car. Officer Boyd explained that his refusal to test would result in the suspension of his license, but appellant remained resolute. Officer Boyd then gave appellant an order notifying him that his driving privilege would be revoked effective 45 days from the date of arrest.

Appellant sought administrative review. Two hearings were held in the matter. At the first hearing, on July 2, 1991, a woman named Linda Bradley testified on appellant's behalf that she was a friend of appellant's, that she had unexpectedly met him on the night in question at the Wooden Nickel bar and had a few drinks with him, that they decided to go to Salinas to go dancing, and that she drove appellant's car because he was too drunk to drive. She stated that the car became stuck on the railroad tracks when she attempted to make a U-turn and she could not get the car to move. At that point appellant, who had been periodically passing out, woke up and started yelling at her. Bradley stated she was upset and walked home.

Richard Cassero also testified on appellant's behalf. He stated that he operated an independent towing business, and that he had noticed appellant's automobile leaving the parking lot of the Wooden Nickel late on the night of May 26. He testified that he knew appellant and recognized his car, and also that he had observed a woman with dark hair driving the car at the time. He stated he was in the area because he was out on a job.

Appellant testified that he had met Bradley at the Wooden Nickel, and that they had decided to go dancing. He stated that she had driven his car because he was drunk. He passed out several times, and came to when the car was stuck on the tracks. He stated that he yelled at Bradley, causing her to become upset and walk home. Shortly thereafter, some people stopped to help him. They tried to move the car for approximately 30 to 45 minutes

until a CHP officer arrived. Appellant explained to the officer what had happened. Appellant admitted that some of his comments and time estimates were unclear due to his drunkenness, and also that he referred to Linda as Kimberly or Julie, the name of his former girlfriend. Appellant stated that he was a taxi driver, and that he had refused to undergo chemical testing because he had not been driving his car.

The hearing was continued so that Officer Boyd could testify. The next hearing was held at a different location with a different hearing officer. The testimony from the first proceeding was tape-recorded and made available to the second hearing officer. Officer Boyd testified that when he found appellant he saw no woman in the area, and that appellant changed the details of his story about the woman who he said had been driving the car, where they had come from, and where they were going. Officer Boyd admitted he did not investigate to see whether a woman was in the area, and that he did not arrive on the road along which she had allegedly walked home. He further testified that the passersby had not seen a woman, although appellant had told them the same story. He confirmed that neither he nor the passersby had seen appellant in the car. Officer Boyd arrested appellant for driving under the influence of alcohol based on the fact that appellant was the registered owner of the car, the keys were in the ignition, he was the only one present who could have been driving, he failed the field sobriety tests, and his statements that he was not the driver were not believable. Officer Boyd testified that he asked appellant to submit to chemical testing and explained the consequences of his failure to do so to him.

The hearing officer issued a decision wherein she determined that appellant was driving the car at the time of the accident, that he was lawfully arrested, that he was warned of the consequences of a refusal to submit to chemical testing, and that he did refuse. Accordingly, appellant's driver's license was revoked for a period of two years.[2]

Appellant petitioned the superior court for a writ of mandate. The court indicated that it had read the administrative record, and, under the independent judgment test, found that it did not support a finding that appellant was driving the car. The court did find, however, that the record supported a finding that there was probable cause at the time for the officer to conclude appellant had been driving, and that the arrest was lawful. The court was thus squarely confronted with the question of whether a finding that a person was driving is necessary before his or her license may be revoked for failure

---

[2]The duration of the suspension or revocation of driving privileges depends upon whether a person has specified prior suspensions or statutory violations. (§§ 23157, subd. (a)(1), 13353, subd. (a).)

to submit to a chemical test under the implied consent laws. The court discussed both the *Jackson* and *Rice* cases, and concluded that the *Rice* case was the better reasoned. Accordingly, suspension of appellant's license was upheld.

On appeal, appellant contends his driving privilege should be reinstated because the trial court should have followed the *Jackson* case, which requires a finding of driving.

## DISCUSSION

■ Initially, we note that the court below properly exercised its independent judgment in reviewing the administrative decision of the DMV. (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395 [188 Cal.Rptr. 891, 657 P.2d 383].) It is this court's duty to examine the trial court's findings to determine whether they are supported by substantial evidence. (*Medina* v. *Department of Motor Vehicles* (1987) 188 Cal.App.3d 744, 747 [233 Cal.Rptr. 557], citing *Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence* (1977) 20 Cal.3d 309, 314 [142 Cal.Rptr. 439, 572 P.2d 53].)

In this case, there is no dispute that the trial court's findings are not supported by substantial evidence. Instead, DMV contends that the trial court did not actually find that the evidence failed to prove that appellant was driving the car because the court did not issue a formal statement of decision to that effect. We find no merit in this position. The court plainly stated: "I don't believe that the independent evidence—independent judgment test would sustain a finding that Mr. Machado was driving the vehicle." The court then analyzed the case based on a finding that the officer did have probable cause to arrest appellant but that ultimately the DMV had not proved that appellant was driving the car.

■ DMV's suggestion that the evidence which supported probable cause to arrest appellant constitutes evidence that he was actually driving the car is similarly without merit. The administrative record which the court reviewed discloses that no one saw appellant in the car, two eyewitnesses testified on his behalf without impeachment, the arresting officer admitted he did not investigate or follow up on appellant's story, and that the hearing officer relied on erroneous and questionable factors in support of her finding that

appellant was driving.[3] We conclude this evidence is sufficient to support the trial court's finding that the DMV failed to meet its burden of proving that appellant was driving.

We turn to the main contention. Section 13353, subdivision (a), authorizes the DMV to suspend a person's driving privilege "[i]f [the] person refuses the officer's request to submit to, or fails to complete, a chemical test or tests pursuant to Section 23157, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23152 or 23153 and that the person had refused to submit to, or did not complete, the test or tests after being requested by the officer . . . ." Section 13353, subdivision (c), expressly requires the referee to make four findings before he or she may affirm the license revocation: (1) whether the officer had reasonable cause to believe the person was driving a vehicle while under the influence of drugs or alcohol; (2) whether the person was placed under arrest; (3) whether the person was told that if he or she refused to submit to a chemical test his or her license would be suspended or revoked; and (4) whether the person refused to submit to such a test.

The authority for section 13353 rests in turn on section 23157, which provides: "(a)(1) Any person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood, breath, or urine for the purpose of determining the alcoholic content of his or her blood, and to have given his or her consent to chemical testing of his or her blood or urine for the purpose of determining the drug content of his or her blood, if lawfully arrested for any offense allegedly committed in violation of Section 23152 or 23153. The testing shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe the person was driving a motor vehicle in violation of Section 23152 or 23153. The person shall be told that his or her failure to submit to, or failure to complete, the required chemical testing will result in a fine, mandatory imprisonment if the person is convicted of a violation of Section 23152 or 23153, and (A) the suspension of the person's privilege to operate a motor vehicle for a period of one year, (B) the revocation of the person's privilege to operate a motor vehicle for a period of two years if the refusal occurs within seven years of a separate violation of Section 23103 as specified in Section 23103.5, Section 23152, or Section 23153 of this code, or Section 191.5 or paragraph (3) of subdivision (c) of Section 192 of the Penal Code which resulted in a conviction, or if the person's privilege to

---

[3]In her findings of facts, the hearing officer states that she relied on an admission by appellant to Officer Boyd that he was the driver; according to the record, appellant never made such an admission but consistently denied being the driver.

operate a motor vehicle has been suspended or revoked pursuant to Section 13353 or 13353.2 for an offense which occurred on a separate occasion . . . ."

In *Medina v. Department of Motor Vehicles, supra,* 188 Cal.App.3d 744, the Fifth Appellate District held that, in addition to the four express findings required by section 13353, the hearing officer must also find that a person was actually driving the vehicle at the time of the arrest. (188 Cal.App.3d at p. 750.) The court relied on *Weber v. Orr* (1969) 274 Cal.App.2d 288 [79 Cal.Rptr. 297], which held that an older version of the implied consent law required a finding that a person actually drive a motor vehicle upon a highway before he or she could be made to yield to a test. (*Id.* at p. 290.) The *Weber* court reasoned that it is the act of driving which implies the giving of consent under the implied consent law. The *Medina* court adopted this approach and held that the implied consent must be based on an act of the arrestee, i.e. driving, and not from a peace officer's "reasonable belief" that the arrestee so acted. According to the *Medina* court, a trial court's finding that the DMV had failed to prove that a person was actually driving the vehicle when arrested precludes a suspension of driving privileges based upon that person's refusal to submit to chemical testing. The court held that a finding that the person was actually driving is a jurisdictional prerequisite to the license suspension proceedings under section 13353. (*Medina v. Department of Motor Vehicles, supra,* 188 Cal.App.3d at p. 751.)

The following year, the First Appellate District issued an opinion which reached a contrary conclusion. In *Rice v. Pierce, supra,* 203 Cal.App.3d 1460, the court rejected the *Medina* analysis and concluded that no finding of actual driving is necessary for a suspension of driving privileges based on section 13353; instead, the court in *Rice* determined that all that is required are the four express findings delineated in the statute. (203 Cal.App.3d at p. 1466.)

The *Rice* court felt that *Medina*'s construction of the statutes paid inadequate deference to the state's broad police power to legislate for the common health and welfare by establishing means to detect and deter drunken driving. (203 Cal.App.3d at at p. 1464.) It reasoned: "The purpose of the implied consent law is two-fold: (1) to obtain the best evidence of blood alcohol content while ensuring cooperation of the person arrested, and (2) to inhibit driving under the influence. [Citations.] It would serve no useful policy to permit an intoxicated person suspected of driving a vehicle to refuse to take a chemical test for alcoholic content. To require an additional finding that the arrestee was actually driving, would undermine the important goals of cooperation and deterrence. Rather than carve out an exception,

the legislative policy tries to get these people off the road and out of harm's way. In light of the severity of the problem and the difficulty of detection, the law encourages compliance with the implied consent law in situations where the officer reasonably suspects the arrestee to have been driving while under the influence of alcohol or drugs. To bar license suspension of persons who are lawfully arrested but are subsequently found not to be the actual driver would render enforcement more difficult at a time when society deserves increased protection in eradicating a problem which unfortunately has become all too common in our modern, mobile culture. [¶] . . . [¶] The statute [section 23157] is unambiguous and states that upon a lawful arrest for driving under the influence, a person must submit to one of the chemical tests administered at the direction of a peace officer. Upon failure to submit, the person shall suffer the loss of his driving privileges. This interpretation is consistent with the very important purpose of the statute to keep persons who are reasonably suspected of operating a vehicle while intoxicated off the road and to secure civil cooperation of all persons privileged to drive by providing objective proof of their sobriety when suspected of driving under the influence. [Citations.]" (*Id.* at pp. 1465-1466.)

The Fifth Appellate District revisited the issue in 1990, in the case of *Jackson* v. *Pierce, supra,* 224 Cal.App.3d 964. The *Jackson* court acknowledged the opinion of the *Rice* court, but reaffirmed its earlier ruling in the *Medina* case. "Section 23157 is the foundational provision of the implied consent law. It says '[a]ny person who drives a motor vehicle is deemed to have given his or her consent to . . . testing . . . .' Under this plain language, it is the *act of driving* a motor vehicle, rather than the act of obtaining a California driver's license, which activates the admonition and testing procedures found in section 1335[3]. Other cases have so held. [Citations.] *Rice* has the effect of writing this elemental phrase out of existence. If possible, courts should not construe a statute so as to render one of its provisions nugatory. [Citation.]" (224 Cal.App.3d at p. 970.)

"We disagree with the decisive role assigned by *Rice* to the portion of section 23157 subdivision (a)(1), which authorizes the testing of a 'person' —as opposed to a 'driver'—lawfully arrested, if the officer reasonably believes the person was driving. (*Rice, supra,* 203 Cal.App.3d at p. 1466.) Although it is indeed unambiguous, this one clause should not be assessed in isolation. Instead, it must be evaluated 'in the context of the entire statute of which it is a part, in order to achieve harmony among the parts.' [Citation.] [¶] Considered in its relationship to the entirety of section 23157, as well as section 13353, the authorization has an obvious and important purpose; that is, to permit an officer to administer a test if he or she has lawfully arrested one who is suspected of driving under the influence. Undoubtedly, the law

recognizes that, for a variety of reasons, an officer on the scene may not in every instance be able to identify with certainty the actual driver of a vehicle. The Legislature has thus made the officer's reasonable suspicion enough to warrant giving the tests to every individual who may have been driving while intoxicated. By doing so, the immediate goal of the law, to preserve the best evidence of a suspect's blood-alcohol content, is achieved. (See *Webb* v. *Miller* (1986) 187 Cal.App.3d 619, 626 [232 Cal.Rptr. 50].) [¶] However, the suspension of an individual's license is another matter. Suspension is the result of the person's failure to do what he or she has consented to do—submit to a test. The first 19 words of section 23157 clearly proclaim that the consent is implied by law from the act of driving. If the person was not driving, he or she did not impliedly agree to submit to the test and, under the statute, has every right to refuse to take it. A person who has no obligation to comply with a law should not be punished for failing to comply with it." (*Jackson* v. *Pierce, supra,* 224 Cal.App.3d at pp. 970-971.)

The *Jackson* court then noted that, while it did not dispute or underestimate the severity of the problem of drunken driving, it was compelled to give effect to the express language of the statutes. Moreover, it added: "[T]he application of section 23157, in a manner consistent with its explicit terms, does not appear to hamper the effort to rid our streets and highways of drunken drivers. If an intoxicated person who declines to take the test is ultimately determined not to have been driving, the long-term aim of the statutes is not deflected; the person in fact conformed to society's desire that he or she not drive while inebriated. It seems rather unfair to discipline individuals for doing what is asked of them. On the other hand, if an intoxicated person is ultimately determined to have been driving, he or she will bear the consequences of either a refusal to take the test or a criminal conviction based in part upon the incriminatory results of a consensual test." (224 Cal.App.3d at p. 972.)

■ Having considered these opposing viewpoints, we are persuaded that the *Rice* case correctly interprets the statutes and legislative intent, and therefore agree with its holding.

The fundamental principle of statutory interpretation is the ascertainment of legislative intent so that the purpose of the law may be effectuated. (*Pollack* v. *Department of Motor Vehicles* (1985) 38 Cal.3d 367, 372 [211 Cal.Rptr. 748, 696 P.2d 141].) The purpose and scope of the implied consent law was recently reiterated in *Mercer* v. *Department of Motor Vehicles* (1991)

53 Cal.3d 753, 759 [280 Cal.Rptr. 745, 809 P.2d 404],[4] which cites *People* v. *Superior Court* (1972) 6 Cal.3d 757 [100 Cal.Rptr. 281, 493 P.2d 1145]: "Although it is clear under *Schmerber* [v. *California* (1966) 384 U.S. 757 (16 L.Ed.2d 908, 86 S.Ct. 1826)] that a person who has been lawfully arrested may have a blood sample forcibly removed without his consent, provided it is done in a reasonable, medically approved manner and provided further that the arresting officer had probable cause to believe the arrestee was intoxicated, nevertheless such an episode remains an unpleasant, undignified and undesirable one. [¶] However, the shocking number of injuries and deaths on the highways caused by drunk drivers has compelled society to adopt extreme measures in response. By its enactment in 1966 of section 13353, the Legislature devised an additional or alternative method of compelling a person arrested for drunk driving to submit to a test for intoxication, by providing that such a person will lose his automobile driver's license for a period of six months if he refuses to submit to a test for intoxication.[5] The effect of this legislation is to equip peace officers with an instrument of enforcement not involving physical compulsion. It is noteworthy that in so doing, the Legislature took pains to condition its use upon a lawful arrest for driving under the influence of intoxicating liquor and upon the reasonable belief of the peace officer that the arrestee was in fact so driving." (6 Cal.3d at pp. 764-765.)

Viewed from this perspective, it is apparent that the Legislature intended to draft a law to require all persons lawfully arrested for drunk driving to submit to testing or lose their driver's license. The focus of this law is on whether the officer had probable cause to believe the person was driving while intoxicated, and therefore was lawfully arrested.

Moreover, construing the statutes in a manner consistent with this intent does not offend the principle that the words in laws be given their plain and

---

[4]In *Mercer*, the Supreme Court ruled that a warrantless misdemeanor arrest for drunk driving is permissible only if the officer sees some volitional movement of the vehicle by the suspected driver. (Statutory exceptions allow an officer to make a warrantless misdemeanor arrest for drunk driving when the offense is not committed in the officer's presence if a vehicle is obstructing a roadway or at the scene of an accident. (§§ 40300.5, 40300.6.)) The court held that an arrest made in the absence of observed movement is unlawful and therefore the suspected driver could not be subject to the license revocation provisions of sections 23157 and 13353. The court invited the Legislature to amend the statutes if it wanted a broader application of the implied consent law. The court also invited the Legislature to "consider resolving a related problem involving interpretation of sections 13353 and 23157 that has divided the Courts of Appeal, but which is not presented in this case. (Compare *Medina* v. *Department of Motor Vehicles*[, *supra*,] 188 Cal.App.3d 744, 750-751, and *Jackson* v. *Pierce*[, *supra*,] 224 Cal.App.3d 964, 967-972, with *Rice* v. *Pierce*[, *supra*,] 203 Cal.App.3d 1460, 1466.)" (*Mercer* v. *Department of Motor Vehicles, supra*, 53 Cal.3d at p. 769, fn. 24.)

[5]Former section 13353, enacted in 1966, was the original implied consent law and the predecessor to section 23157. The language is essentially the same, although the duration of suspensions and revocations has been changed.

traditional meaning. Considered in its entirety, the language of sections 13353 and 23157 plainly applies to persons who are lawfully arrested for drunk driving when the arresting officer has probable cause to believe the person was driving. The introductory language of section 23157 ("Any person who drives a motor vehicle") operates to describe the general class of persons to whom the law applies—those who drive. The language does not limit application of the laws to those who are proved to be actually driving at the time of the lawful arrest. Rather, the language of the sections specifically conditions their application on whether a peace officer has probable cause to believe a person was driving.

For these reasons, as well as those set forth in *Rice,* we hold that it is not necessary for the DMV to prove that a person was actually driving at the time of arrest before his or her license may be suspended or revoked under sections 13353 and 23157.

### DISPOSITION

The order denying the petition for a writ of mandate is affirmed.

Cottle, Acting P. J., and Bamattre-Manoukian, J., concurred.