[No. F024660. Fifth Dist. June 15, 1998.]

CHARLES H. WILMOT, Plaintiff and Appellant, v.
COMMISSION ON PROFESSIONAL COMPETENCE, Defendant and
Respondent;
KERN HIGH SCHOOL DISTRICT, Real Party in Interest.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III, IV, V, VI and VII.

**COUNSEL**

Charles H. Wilmot, in pro. per., for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Schools Legal Service, Frank J. Fekete and Grant Herndon, for Real Party in Interest and Respondent.

## OPINION

### ARDAIZ, P. J.—

#### INTRODUCTION

The Education Code sets forth procedures to be followed when a school district seeks to dismiss a teacher. When the school district gives written notice of its intention to dismiss a teacher, the teacher may make a written request or "demand" for a hearing before the Commission on Professional Competence (see Ed. Code, § 44944, subd. (b))[1] to contest the dismissal. Section 44944, subdivision (a), provides that when a teacher makes such a request, "the hearing shall be commenced within 60 days from the date of the employee's demand for a hearing . . . . " In some instances both the teacher and the school district desire to have more than 60 days to prepare their presentations of evidence to the commission. Fourteen years ago in *Powers* v. *Commission on Professional Competence* (1984) 157 Cal.App.3d 560, 569, [204 Cal.Rptr. 185], this court held that the parties could " 'stipulate that the necessary ceremonial has been observed' " and that such a stipulation would satisfy the 60-day requirement of section 44944, subdivision (a). This has been the law for at least the past 14 years. In the present case appellant entered into such a stipulation within the 60-day period. After the 60 days elapsed, he then contended that the commission had no jurisdiction to hold the hearing and to render its decision ordering his dismissal. In the published portion of this opinion, we reaffirm our holding in *Powers* that the parties may "stipulate that the necessary ceremonial has been observed" and may thereby satisfy the 60-day requirement of section 44944, subdivision (a).

Appellant was a teacher at Highland High School in Kern County. The Commission on Professional Competence for the Kern High School District ordered appellant dismissed from employment with the district for dishonesty (§ 44932, subd. (a)(3)) and for evident unfitness for service (§ 44932, subd. (a)(5)). Appellant petitioned the superior court for review of the commission's decision. (§ 44945.) The superior court reviewed the matter and affirmed the decision of the commission. Appellant now appeals from that superior court judgment.

Appellant was represented by counsel at his hearing before the commission, but represented himself in the superior court proceeding and again

---

[1]All future references are to the Education Code unless otherwise stated.

represents himself on his appeal to this court. His briefing is lengthy and poorly focused, but does present seven separately numbered contentions under the heading "ARGUMENT."[2] We will begin with a summary of the facts found to be true by the superior court in its independent review of the evidence presented to the commission. (§ 44945.) Then we will briefly address the law pertaining to judicial review of a decision of a commission on professional competence. Finally, we will list and address each of appellant's seven separately numbered contentions. As we shall explain, we find no error and will affirm the judgment.

## FACTS

The district's second amended accusation gave appellant notice of seven incidents or sets of incidents alleged by the district to constitute cause for dismissal on grounds of dishonesty (§ 44932, subd. (a)(3)), evident unfitness for service (§ 44932, subd. (a)(5)), and persistent violation of or refusal to obey school laws or reasonable regulations (§ 44932, subd. (a)(7)). Only four of these are pertinent to this appeal. We will refer to these as the writing proficiency exemption matter, the missing files matter, the false evaluation matter and the unauthorized purchases matter. As to these four matters, the facts found to be true by the superior court were virtually identical to the facts found to be true by the commission. They are amply supported by substantial evidence and are as follows.[3]

### The Writing Proficiency Exemption Matter

The district administers a writing proficiency examination, a test which is a graduation requirement. In the latter part of April 1992, appellant asked

[2] Appellant's name appears on the vexatious litigant prefiling orders list compiled and disseminated by the Judicial Council of California. (See Code Civ. Proc., § 391.7, subd. (d).) According to the list, the prefiling order was made in In re Marriage of Wilmot (Super. Ct. Kern County, No. 525300) on May 10, 1993, and pertains only to filings related to that action. The case presently before us is not action No. 525300. We therefore treat the present appeal no differently than we would if appellant's name did not appear on the list.

[3] The factual account which follows is taken from the superior court's statement of decision. In view of appellant's oft-repeated but erroneous assertion that the superior court "set aside" any commission finding not restated by the superior court in the exact same language used by the commission (addressed in an unpublished portion of this opinion), we expressly note that the account which follows has been edited slightly for purposes of style and grammar. It contains no substantive change from the superior court's own account of these events as stated in the superior court's statement of decision. We should also note here that the following factual account does not include various procedural facts pertinent to appellant's contention that the Commission on Professional Competence did not have jurisdiction to render any decision at all. We will address that contention, and the procedural facts pertinent to it, in part I of this opinion, *post*.

Highland's then dean of guidance, Thomas L. James, to exempt an "independent study" student (the student) from the writing proficiency requirement. Appellant did not at that time divulge the name of the student about whom he was speaking, but said that the student had been unable to pass the exam and that the student may qualify for a special education exemption. James denied the request and referred appellant to the special education department. Appellant then asked a program specialist in the special education department for the exemption. This time appellant disclosed the name of the student. The program specialist, Katherine W. Riley, denied appellant's request. Riley informed appellant that the student had to be observed by the department staff for a period of time before the exemption could be granted. The student had failed the writing proficiency examination on prior occasions. In May of 1992 the student was not entitled to a passing grade or to an exemption.

After mid-April 1992 appellant could not use his computer terminal to enter writing proficiency grades or exemption codes.[4] On May 4, 1992, appellant attempted to change the student's writing proficiency score by using a computer terminal assigned to special education secretary Marti Sheldon. Appellant started to use Sheldon's computer without her permission and was still working at that computer when Sheldon returned from her break. Appellant misrepresented to her the purpose for his unprecedented visit and continued his task. He was unable, however, to make the change because Sheldon's computer did not have the necessary capability. The next day appellant continued his efforts to change the student's writing proficiency score. He obtained an extra set of keys usually kept outside of the office of Registrar Judy Etchechury, unlocked the registrar's office and entered it. Registrar Etchechury was taking her usual morning break at a location away from her office, as was her custom. Etchechury had already used her password to access the computer system, and her computer was still on when she left the office. Once inside the registrar's office, appellant was able to gain access to the student's records. Appellant replaced the student's failing writing proficiency grade with an exemption code.

District officials became aware of the student's unauthorized and improper writing proficiency exemption and corrected it. Appellant's action caused the school administration to become involved in a controversy with the student's mother about the reasons for the removal of the exemption.

### The Missing Files Matter

On May 5, 1992, Mr. James went into appellant's classroom to retrieve the student's school files. Appellant was the student's "independent study"

---

[4]This was because district officials had reduced his computer capability after he had "dropped" a midterm Highland High graduate from the Highland computer records in February or March of 1992.

teacher and had custody of those files. Mr. James was able to find a copy of the student's 1991-1992 file on appellant's desk, but was unable to locate her 1989-1990 or her 1990-1991 files. On May 12 James asked appellant about the student's missing files. Appellant said he could not locate them and that perhaps they had gotten lost during a classroom change. On June 4 appellant placed the student's 1989-1990 and 1990-1991 files inside the car of Highland principal Dr. Anne Johnson Scott. Also on June 4, appellant met with Mr. James, Dr. Scott, and assistant vice-principal for administration Shirley Swank. Mr. James informed appellant that he (James) had concluded that it was appellant who had changed the student's writing proficiency results. James also told petitioner that the matter would be forwarded to the district for further action. Appellant said he would respond to the allegations within 10 days.

Within minutes of leaving the above described June meeting, appellant spoke to Daryl Larsen, a police investigator employed by the district. Appellant told Larsen that Larsen should look in the back of Dr. Scott's car to find the student's missing files. Appellant undertook this action with the intent to embarrass the school principal, Dr. Scott, and to place blame on her for the "missing" files.

*The False Evaluation Matter*

Appellant met with Dr. Scott and assistant vice-principal Swank on October 25, 1991, for a preevaluation conference. Appellant was told that Ms. Swank would prepare his 1991-1992, evaluation. On June 2, 1992, Ms. Swank gave appellant an evaluation she had prepared. The evaluation included a rating of appellant in each of five categories and a "Narrative Summary Evaluation." Swank assigned a "Satisfactory" rating, defined by the district as "Meets expectations of the Kern High School District," to appellant in each of the five categories. The "Narrative Summary Evaluation" stated: "Mr. Wilmot works well with students on an individual basis. Due to concerns that have recently come up, I am requesting to further evaluate Mr. Wilmot during the 1992-[19]93 school year." Swank discussed this evaluation with appellant. Appellant took the written evaluation with him, and told Swank he would return it with his own written comments. On June 16 appellant returned a different "evaluation" to Ms. Swank. The one he returned did not have a "Satisfactory" rating in each of the five rating categories. Instead it had the higher rating of "Commendable" in two of the five categories, and the highest rating of "Exemplary" in the other three categories. The "Narrative Summary Evaluation" portion of the "evaluation" did not include the above-quoted two sentences Swank had written. Instead,

it contained a lengthy narrative. Appellant had prepared this changed "evaluation" himself.[5] Appellant made no effort to advise Swank of the changes he had made to the evaluation she had given him. Nor did he ever check to see if Swank had accepted the changes.

During June of 1992 appellant had a job interview with Ms. Jennine Thompson, the principal of another high school in the district. During the job interview, appellant presented the altered, self-prepared "evaluation" to Thompson and represented it to be a legitimate evaluation by Ms. Swank. He intended for Thompson to rely on this "evaluation."

Appellant had applied for a merit salary increment (i.e., a raise) on March 5, 1992. His application had been denied by Dr. Scott. On June 16, 1992, appellant filed with the district superintendent an appeal of Dr. Scott's denial of the salary increment. In support of his appeal to the superintendent,

---

[5] The "evaluation" returned by appellant to Swank was entered into evidence at the commission hearing and thus was also reviewed by the superior court. Its "Narrative Summary Evaluation" stated:

"Charles Wilmot has been head teacher in Independent Studies (IS) at Highland for the past six years. He continues to maintain a well organized, academically sound (continueously [sic] updating curriculum), and strongly student centered IS. The overall excellence in different IS areas has earned him two Commendable and three Exemplary ratings. He is unsurpassed in the record keeping of IS students; has again maintained the highest ADA in the district; has a very obvious and real concern in working with all IS students; and closely monitors their progress. He has high expectations of the students and reviews each subject in detail with these high standards in mind. Mr. Wilmot's counseling skills are quite evident in working in every aspect with all students and his caring personal approach is one reason for his student's success. Mr. Wilmot is the person to contact with any questions in regard to IS. He has an indepth knowledge of the total operations of IS. In his tenure with IS, his organizational skills have been tapped on numerous occasions by his director, and he has presented workshops for other districts on how to implement IS in their district. This year he has been contacted by the office of the atheletic [sic] commissioner in regard to legalities of IS students participating in sports, and was contacted by West High's dean in regard to IS curriculum matters. After a review of IS files in September, George Pinheiro, IS Director noted that when he and Diane Fletcher, Resource Teacher, left Highland they were, 'in a state of near euphoria'. Mr. Wilmot works hard to keep IS from becoming an isolated program with forgotten students. He constantly keeps Highland's administration, counseling, attendance, registar, [sic] and security informed of the status of all IS students. Independent Studies was relocated (third time in two years) to RC12. Mr. Wilmot transformed the former Industrial Arts office into an attractive and very functional learning environment for IS. He coordinated the major aspects of the relocation with AP. Dave Yanney and Bill Ennis, Maintenance Supervisor using his own time several weeks before the beginning of school. Mr. Wilmot is always willing to help out whenever needed. He was very instrumental on several occasions in helping to control dangerous and potentially dangerous situations on campus and at atheletic [sic] events, even at a football game at Shafter. Mr. Wilmot has trained all certificated and classified employees in Highland's IS in the various and diversified aspects and duties inherent to IS. He delegates clear and concise directives to his IS staff. Mr. Wilmot is an outstanding teacher and his expertise in IS, along with a truly deep caring for students, makes him an asset to Highland's staff and the Kern High School District."

appellant forwarded to the superintendent the self-prepared "evaluation" described above. He represented it to be a legitimate evaluation and intended for the superintendent to rely on it.

### The Unauthorized Purchases Matter

During the five-year period that preceded the 1991-1992 school year, prior approval from district administrators was required for the purchase by district employees of equipment or supplies. If the purchase was for the independent studies program, then authorization had to be obtained from the district's special programs administrator, Mr. George Pinheiro, or his designee. If the purchase was for a program administered at the school site, then approval had to be obtained from a designated local administrator. Appellant was aware of this policy. On June 1 and June 15, 1992, appellant made unauthorized purchases of equipment and supplies at a local retail store called BizMart. The total cost of the items in the June 1 purchase was $316.72. The total cost of the items in the second purchase was $2,795.20. Items in the second purchase included a photocopier and a word processor. Appellant placed the purchased items in a warehouse owned by a friend. He did not inform any other district employee about his purchase or about the storage arrangements. At some point appellant took the copier and word processor to his home, where he used these items. With the exception of some supplies, all of the items purchased at BizMart were returned to the district after they were discovered by a district police officer. The district refused to pay BizMart for the items purchased by appellant and was able to return most of the items to BizMart. Appellant intended to deceive district authorities for as long as he could, and intended to use the equipment and supplies for his 1992-1993 class assignment.

Just as the commission had done, the court concluded that appellant's above described actions constituted acts of dishonesty within the meaning of section 44932, subdivision (a)(3), and that these same acts of dishonesty demonstrated evident unfitness for service within the meaning of section 44932, subdivision (a)(5), and an "unfitness to teach when measured by the factors first enunciated by the Supreme Court in *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375]."[6] Just as the commission had done, the court further concluded that appellant's demonstrated dishonesty and evident unfitness for service constituted cause for dismissal from his employment with the district. The court further stated: "Petitioner's misconduct was serious and pervasive, affecting the educational structure in different ways. He falsified student records (Allen matter);

---

[6]We will address the significance of the finding of unfitness to teach, and of the *Morrison* case, in an unpublished portion of this opinion.

he spent District money without authorization and caused such purchased school property to be stored off District property without authorization or notice; he falsely accused the school principal of mishandling the 'missing Allen files' to cover up his own machinations regarding the Allen exemption; he misused the teacher evluation [*sic*] process to attempt to mislead other district officials concerning his qualifications; and he surreptitiously misused another employee's computer access to falsify the Allen transcript. Because petitioner's acts of dishonesty were so multi-facted, [*sic*] as set out above, the Court concludes that such or similar acts are likely to recur. Petitioner's motivations were, for the most part, for the purposes of self-advancement (evaluation incident, Bizmart purchases) or retaliation and vindictiveness (the Scott accusation). The educational process was disrupted in the Allen matter because of the need to correct records and explain the need for correction to an upset parent."

## JUDICIAL REVIEW OF COMMISSION DECISIONS

"The decision of the Commission on Professional Competence may, on petition of either the governing board or the employee, be reviewed by a court of competent jurisdiction in the same manner as a decision made by a hearing officer under Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code." (§ 44945.) That is, "[j]udicial review may be had by filing a petition for writ of mandate in accordance with the provisions of the Code of Civil Procedure, subject, however, to the statutes relating to the particular agency." (Gov. Code, § 11523; see also *Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence* (1977) 20 Cal.3d 309, 313-314 [142 Cal.Rptr. 439, 572 P.2d 53], and *Pittsburg Unified School Dist.* v. *Commission on Professional Competence* (1983) 146 Cal.App.3d 964, 976 [194 Cal.Rptr. 672].) The petition is filed "in superior court." (*Pasadena Unified Sch. Dist., supra*, 20 Cal.3d at p. 313.) "The court, on review, shall exercise its independent judgment on the evidence." (§ 44945.) The superior court's review of the petition for writ of mandate is governed by Code of Civil Procedure section 1094.5. (*Pasadena Unified Sch. Dist., supra*, 20 Cal.3d at p. 314; *Pittsburg Unified School Dist., supra*, 146 Cal.App.3d at p. 976.) That standard of review is as follows:

"(b) The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.

"(c) Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence." (Code Civ. Proc., § 1094.5.)

After the superior court has rendered its judgment, however, and the losing party has appealed, a different standard of review applies to the appellate court.

█ "Where a superior court is required to make such an independent judgment upon the record of an administrative proceeding, the scope of review on appeal is limited. An appellate court must sustain the superior court's findings if substantial evidence supports them. (*Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308-309 [196 P.2d 20]; *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 71-73 [64 Cal.Rptr. 785, 435 P.2d 553]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242]; *Harlow* v. *Carleson* (1976) 16 Cal.3d 731, 739 [129 Cal.Rptr. 298, 548 P.2d 698].) In reviewing the evidence, an appellate court must resolve all conflicts in favor of the party prevailing in the superior court and must give that party the benefit of every reasonable inference in support of the judgment. When more than one inference can be reasonably deduced from the facts, the appellate court cannot substitute its deductions for those of the superior court. (*Moran* v. *Board of Medical Examiners, supra,* 32 Cal.2d at p. 308.)" (*Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence, supra,* 20 Cal.3d at p. 314.)

"Evidence is substantial if any reasonable trier of fact could have considered it reasonable, credible and of solid value." (*Kearl* v. *Board of Medical Quality Assurance* (1986) 189 Cal.App.3d 1040, 1052 [236 Cal.Rptr. 526]; *Lam* v. *Bureau of Security & Investigative Services* (1995) 34 Cal.App.4th 29, 36 [40 Cal.Rptr.2d 137].) An appellate court will reverse a trial court's decision not only when the trial court's decision is not supported by substantial evidence, but also when the trial court's decision is based on an erroneous conclusion of law. (*Magit* v. *Board of Medical Examiners* (1961) 57 Cal.2d 74 [17 Cal.Rptr. 488, 366 P.2d 816].) An appellate court will also reverse the trial court judgment if the trial court has failed to make a necessary factual determination. (*Allegretti* v. *Board of Osteopathic Examiners* (1956) 145 Cal.App.2d 435 [302 P.2d 694]; *Barber* v. *Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652 [53 Cal.Rptr.2d 4].)

APPELLANT'S CONTENTIONS

An appellate court once commented on a difficult issue of law by observing that "[t]hose who have tried to extract a coherent set of rules from cases

and treatises . . . have found it easier to comprehend a 'washing bill in Babylonic cuneiform.' " (*Omaha Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1266, 1272 [258 Cal.Rptr. 66], quoting from Gilbert & Sullivan, Pirates of Penzance (1879).) If we were charged not only with the task of reviewing the 177 pages of mostly incomprehensible briefing authored by appellant, but also with the task of reviewing a washing bill in Babylonic cuneiform, we would probably find it easier to understand the washing bill. Rather than attempt to paraphrase appellant's seven contentions of error, we will list them here in the same language used by appellant in the seven headings he uses in his brief. We will then separately address each of these contentions.

Appellant contends: (1) "the trial court made an erroneous conclusion of law in determining that the Commission acted within its jurisdiction," (2) "the Commission and the trial court's failure to consider all evidence on the issue of unfitness to reach requires reversal of the trial court's judgment and issuing of the writ," (3) "as a matter of law the trial court was required to issue the writ of mandate after determining that findings made by the Commission were not supported by the weight of the evidence," (4) "as a matter of law the accusation fails to state sufficient facts to constitute a cause of action for unfitness to teach pursuant to the Supreme Court's holding in *Morrison*" (referring to *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375]), (5) "there is no substantial evidence from which essential inferences can be drawn from the trial court's findings requiring reversal of its judgment and the writ to issue," (6) "the trial court's substitution of its own findings for those of the Commission results in reversible error per se," and (7) "the trial court erred as a matter of law by failing to make findings on material issues and issuing an inadequate statement of decision, thus, violating sections 632 and 634 of Code of Civil Procedure and California Rule of Court 232, requiring reversal per se."

I.

 Section 44944, subdivision (a), states in part that ". . . if a hearing is requested by the employee, the hearing shall be commenced within 60 days from the date of the employee's demand for a hearing." Appellant's first argument is that this 60-day time period "is jurisdictional" and that "if the hearing is not conducted by a Commission within 60 days from the date of the employee's demand, the Commission has no jurisdiction to conduct the hearing . . . ." Although appellant's argument is not clearly articulated, he appears to contend that under no circumstance can the hearing take place more than 60 days after the employee has demanded the hearing unless the commission has begun to take evidence within 60 days of the employee's demand for a hearing. Appellant is mistaken.

The Education Code prescribes a detailed procedure to be followed when a school district desires to dismiss an employee. Section 44932 states that "[n]o permanent employee shall be dismissed except for one or more of the following causes . . . ." Among the causes listed are dishonesty (subd. (a)(3)) and evident unfitness for service (subd. (a)(5)). The dismissal process begins in the manner described in section 44934. As pertinent here, that section states "upon a written statement of charges formulated by the governing board, charging that there exists cause, as specified in Section 44932 . . . , for the dismissal . . . of a permanent employee of the district, the governing board may, upon majority vote . . . give notice to the permanent employee of its intention to dismiss him or her at the expiration of 30 days from the date of service of the notice, unless the employee demands a hearing as provided in this article." The section 44934 notice of intention to dismiss "shall be in writing and be served upon the employee personally or by United States registered mail addressed to him at his last known address." (§ 44936.) Certain other written information "shall be attached to" the notice of intent to dismiss. (§ 44936.) This includes a "copy of the charges filed, containing the information required by Section 11503 of the Government Code." (§ 44936.) Section 11503 of the Government Code is one provision of the legislation more commonly known as the Administrative Procedures Act (Gov. Code, § 11500 et seq.). It describes the required content of a charging document known as an "accusation." The "information required by Section 11503 of the Government Code" (§ 44936) includes "a written statement of charges which shall set forth in ordinary and concise language the acts or omissions with which the respondent is charged, to the end that the respondent will be able to prepare his defense." (Gov. Code, § 11503.) There must also be a specification of "the statutes and rules which the respondent is alleged to have violated," but this information "shall not consist merely of charges phrased in the language of such statutes and rules." (Gov. Code, § 11503.) If the employee does not demand a hearing within 30 days of being served with the notice of intent to dismiss, the school district may dismiss the employee at the end of the 30-day period. (Ed. Code, § 44937.) If the employee demands a hearing, ". . . the governing board shall have the option either (a) to rescind its action, or (b) schedule a hearing on the matter." (§ 44943.) As we have already noted, ". . . if a hearing is requested by the employee, the hearing shall be commenced within 60 days from the date of the employee's demand for a hearing." (§ 44944, subd. (a).) "The hearing shall be initiated, conducted, and a decision made in accordance with" Government Code section 11500 et seq. (the Administrative Procedures Act). (*Ibid.*)

We see at least two reasons why appellant is incorrect in his contention that the commission does not have jurisdiction to conduct a hearing if no

evidence has been presented within 60 days of the employee's demand for a hearing.

First and foremost, the very subsection of the very statute upon which appellant relies says otherwise. Subdivision (a) of section 44944 also provides that "[i]f any continuance is granted pursuant to Section 11524 of the Government Code, the time limitation for commencement of the hearing as provided in this subdivision shall be extended for a period of time equal to such continuance." The statute therefore expressly contemplates that in some instances the "commencement of the hearing" will take place more than 60 days after an employee has requested a hearing.

Second, even if we liberally construe appellant's argument as a contention that in this particular case the commission lacked jurisdiction to hold a hearing because no continuance was granted and no evidence was presented within the 60 days, the argument still fails. The argument fails because appellant's hearing "commenced within 60 days" within the meaning of section 44944, subdivision (a). The procedural facts pertinent to this issue have never been in dispute. They are as follows. On May 10, 1993, the district's board of trustees adopted a written statement of charges alleging that cause existed for appellant's dismissal. On May 12 appellant was personally served with a notice of intent to dismiss. On May 14 appellant demanded a hearing. An accusation was filed on July 7 and was served on appellant's legal representative at that time, Attorney Richard J. Papst. On July 7 Mr. Papst, on behalf of appellant, and Attorney Frank J. Fekete, on behalf of the district, entered into a stipulation stating that "[t]he hearing in this matter shall commence on July 9, 1993 before an Administrative Law Judge of the Office of Administrative Hearings," that "[t]he hearing shall be opened for jurisdictional purposes only on that date and no appearance by the parties or their counsel is required," that "[t]he hearing shall be reconvened on September 7, 1993," that "[t]he jurisdiction of Commission to proceed is established as of July 9, 1993," and that "[t]he parties agree that the terms of this Stipulation satisfy the jurisdictional and other requirements of Education Code Section 44944."[7]

---

[7]At the hearing before the commission, the evidence as to appellant's actions was largely undisputed. One factual dispute, however, was whether Mr. Papst was authorized to represent appellant and therefore to enter into any stipulation on behalf of appellant. Appellant said Papst was not authorized to represent him. The district called Papst as a witness. Papst testified about his meetings with appellant, his settlement negotiations with the district on behalf of appellant, his September 7, 1993, appearance before the commission on behalf of appellant (also documented in the September 7 transcript of proceedings), and the May 7, 1993, letter he wrote to the district on behalf of appellant after meeting with appellant. The letter was entered into evidence and began: "Dear Mr. Fillbrandt: I am the attorney currently

Without mentioning the language of the stipulation,[8] appellant argues that "[s]ince the Commission only has such powers as conferred on it by the Education Code and the Government Code . . . and the parties cannot confer such powers by stipulation, the only possible conclusion is that the Commission did not acquire any power or subject matter jurisdiction by the filing of the Stipulation Re Commencement of Hearing on July 9, 1993." We are not sure what appellant means by this. We agree that subject matter

---

designated by California Teachers Association (CTA) to represent Mr. Wilmot in any potential adverse disciplinary or dismissal actions." Mr. Fillbrandt was an associate superintendent for the district. Both the commission and the superior court concluded that Mr. Papst was indeed acting on behalf of appellant when Papst signed the stipulation. On this appeal, appellant makes no contention that this finding was not supported by substantial evidence. He makes no mention of Papst's testimony. Rather, he appears to contend that even if Papst was authorized to act on his behalf, the stipulation is not valid because the law does not permit such a stipulation. Appellant asserts in his opening brief that with regard to the commission's jurisdiction "the facts are not in dispute" and "the question of jurisdiction involves only an interpretation of the pertinent sections" of law. Appellant's jurisdictional argument on this appeal could perhaps be phrased, in the vernacular, as: "I don't care if I agreed in writing that 'jurisdiction of the Commission to proceed is established as of July 9, 1993' and 'the terms of this Stipulation satisfy the jurisdictional and other requirements of Education Code Section 44944'—the jurisdiction of the Commission to proceed was not established as of July 9, 1993, and the Commission had no jurisdiction to act after July 13, 1993."

[8]In its entirety, the stipulation between appellant and the district stated:

"It Is Hereby Stipulated by and Between the Parties through their attorneys as follows:

"1. The hearing in this matter shall commence on July 2, 1993 before an Administrative Law Judge of the Office of Administrative Hearings. The hearing shall be opened for jurisdictional purposes only on that date and no appearances by the parties or their counsel is required. The hearing shall be reconvened on September 7, 1993, at 10 a.m. in Bakersfield, California, and continue through September 9, 1992, or until completed. The pleadings, notices and other statutory documents filed in this action as of the date of this Stipulation may be deemed to have been offered into evidence by Petitioner Kern High School District subject to the right of Respondent Charles Wilmot to offer objections to the substance of those documents at the reconvening of the hearing on September 7, 1993.

"2. The parties waive the appointment or appearance of their respective appointees to the Commission at this time and will make such appointments not later than seven calendar days prior to the reconvening of the hearing on September 7, 1993, as specified in Education Code Section 44944.

"3. Respondent Charles Wilmot specifically waives his right to appear in person at the commencement of the hearing, reserving fully his right to be present and represented when the hearing reconvenes on September 7, 1993 and any subsequent date. Each party declares that the commencement of the hearing by the act of the filing of this Stipulation is in its best interests and that this Stipulation constitutes a motion by each party that the hearing be commenced, continued and reconvened as specified in this Stipulation.

"4. For all other purposes, including discovery, the rights of the parties shall be determined as though the hearing will commence on September 7, 1993, except that the jurisdiction of the Commission to proceed is established as of July 9, 1993. The parties agree that the terms of this Stipulation satisfy the jurisdictional and other requirements of Education Code Section 44944.

"5. Upon reconvening, or for any purposes in the interim, this matter may be heard by any Administrative Law Judge of the Office of the Administrative Hearings."

jurisdiction is sometimes referred to as "jurisdiction to hear or determine the case." (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715]; see also 2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 10, pp. 555-556.) We agree that the phrase "lack of jurisdiction" is sometimes used to refer to a situation in which a tribunal has no power to act "without the occurrence of certain procedural prerequisites." (*Abelleira*, *supra*, at p. 288.) We agree that "[a]n administrative agency may not validly act in excess of, or in violation of, the powers conferred upon it." (*Larson* v. *State Personnel Bd.* (1994) 28 Cal.App.4th 265, 273-274 [33 Cal.Rptr.2d 412].) We agree that "[i]f it does so, the action taken is void and subject to being set aside through a proceeding in administrative mandate . . . ." (*Larson*, *supra*, at p. 274.) We agree that "jurisdiction over the subject matter cannot be conferred by consent." (*Summers* v. *Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668]; accord, see also *Sullivan* v. *Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 307, fn. 9 [63 Cal.Rptr.2d 74, 935 P.2d 781].) But the parties here were not attempting to confer subject matter jurisdiction by consent. Even if we assume that the administrative agency's jurisdiction would end if no hearing was "commenced" within 60 days of an employee's request for a hearing and if no continuance was granted (§ 44944, subd. (a)), the agency unquestionably had jurisdiction to commence the hearing "within 60 days from the date of the employee's demand for a hearing." (§ 44944, subd. (a).) Here, appellant made his request on May 14 and thus the hearing had to "be commenced" not later than July 13 ("within 60 days"). (§ 44944, subd. (a).) It commenced on July 9, within the 60 day period. It is true that no evidence was presented on July 9 and that appellant was not present on that date, but that is what he agreed to. The agreement was not an agreement to confer jurisdiction by consent, but rather was an agreement to exercise the jurisdiction which existed by virtue of section 44944.

In agreeing to the July 9 stipulation, both appellant and the district apparently relied on this court's opinion in *Powers* v. *Commission on Professional Competence*, *supra*, 157 Cal.App.3d 560. In *Powers*, the administrative law judge continued the hearing on his own motion after the first witness had been called and had been asked six foundational questions. This occurred within 60 days of the teacher's request for a hearing. The teacher unsuccessfully objected to the continuance. The hearing reconvened more than three months later. After the hearing was ultimately completed and the commission found cause for dismissal on grounds of unprofessional conduct and insubordination, the teacher sought judicial review. The trial court found there had been no commencement of the hearing within 60 days. It relied on a Court of Appeal opinion holding that a civil case had not been brought to "trial" within five years when prospective jurors were sworn and seated and

a continuance granted, all within the Code of Civil Procedure former section 583 five-year period, and then the five-year period expired. The California Supreme Court later reversed the Court of Appeal opinion in *Hartman* v. *Santamarina* (1982) 30 Cal.3d 762 [180 Cal.Rptr. 337, 639 P.2d 979, 32 A.L.R.4th 833]. In *Powers*, this court relied on the California Supreme Court's *Hartman* decision to conclude that the teacher's hearing had indeed commenced. We stated "[w]e find no reason why *Hartman* . . . cannot be applied by analogy to the facts of the instant case," and we expressly quoted the language of the *Hartman* opinion which rejected the *Hartman* defendant's argument that the procedure of impaneling a jury just to send it home five minutes later was a "charade." (*Powers, supra,* at p. 569.) We quoted *Hartman* and stated: " 'To this there are two answers, one short, one a bit longer. The short one is that the defendant need not insist that the charade be played out: he can, saving all his objections, stipulate that the necessary ceremonial has been observed. The long answer is that from time immemorial charades and fictions have played a vital role in helping courts over, around and under legal roadblocks which they were not quite ready to assault head-on.' " (*Ibid.*; *Hartman* v. *Santamarina, supra,* 30 Cal.3d at p. 766.)

Appellant simply ignores the above quoted language of *Powers.* He does not attempt to present any argument as to why *Powers*'s assertion that a party can "stipulate that the necessary ceremonial has been observed" does not apply here. Nor does he ask us to rethink and overrule our *Powers* decision. Furthermore, the *Powers* case was decided 14 years ago and the Legislature has not seen fit to amend section 44944 to outlaw commencement of a hearing by stipulation. Neither appellant nor any other employee is in any way disadvantaged by the practice. An employee who does not wish to enter into such a stipulation may simply refuse to do so.

Appellant calls our attention to two pre-*Powers* cases, *Reeves* v. *Superior Court* (1973) 36 Cal.App.3d 291 [111 Cal.Rptr. 390], and *Governing Board* v. *Felt* (1976) 55 Cal.App.3d 156 [127 Cal.Rptr. 381], as support for his argument that the 60-day time limit of section 44944 "is jurisdictional." These cases do not help appellant because the issue in appellant's case is not whether section 44944 has to be complied with. It does have to be complied with. The issue is whether it *was* complied with. The commission and the superior court both cited *Powers* and ruled that the statute was complied with. In this opinion we do the same.

*Reeves* came about after the Legislature in 1971 changed the procedures involved in teacher dismissals. Prior to the 1971 legislation, teacher dismissal hearings were heard in the first instance in the superior court. The

1971 legislation (Stats. 1971, ch. 361), which became effective in March of 1973 (*Reeves* v. *Superior Court, supra,* 36 Cal.App.3d at p. 293), created the present system in which a hearing is held before a Commission on Professional Competence. It included the language now found in section 44944, subdivision (a), but then codified in section 13413, saying "[i]n the event a hearing is requested by the employee, the hearing shall be commenced within 60 days from the date of employee's demand for a hearing." The issue in *Reeves* was whether the new legislation applied retroactively so as to end pending judicial teacher dismissal proceedings. The court held that it did not. The *Reeves* court observed: "In the instant case, petitioner demanded a hearing sometime in 1970. Thus, if the present law were applicable, the hearing should have been held some three years ago. Since this would have been impossible, and since this time limit appears to be jurisdictional in nature, dismissal proceedings probably could not be brought." (*Reeves, supra,* 36 Cal.App.3d at p. 294.) The court further observed that if the legislation were retroactive, the governing board might not be able to dismiss the teacher even by filing a new notice of intention to dismiss and thereby starting a new dismissal proceeding. This would be because of language then found in former section 13413 and now codified in section 44944, subdivision (a) stating "[n]o testimony shall be given or evidence introduced relating to matters which occurred more than four years prior to the date of the filing of the notice." The *Reeves* court discerned "no intention of the Legislature to annihilate causes of such importance, or even to subject them to possible defeat for untimeliness." (36 Cal.App.3d at p. 294.)

In *Governing Board* v. *Felt, supra,* 55 Cal.App.3d 156, the school district mailed the teacher notice of her dismissal hearing 11 days prior to the scheduled date of the hearing. The teacher's "agent" received it three days after it was mailed and eight days before the scheduled hearing date. The notice had been addressed with the correct street address but with the wrong suite number ("Suite 304" instead of the correct "Suite 312") at that street address. The "agent" also had to pay "20 cents postage due" for the notice. (*Governing Board, supra,* 55 Cal.App.3d at p. 159.) An applicable provision of the Administrative Procedures Act provided then, as it does now, that "[t]he agency shall deliver or mail a notice of the hearing to all parties at least 10 days prior to the hearing." (Gov. Code, § 11509.) The scheduled hearing date was 53 days after the date on which the teacher had made her request for a hearing. On the hearing date the teacher's counsel "announced to the commission that he was specially appearing to object to the notice." (55 Cal.App.3d at p. 160.) "Over objection of counsel for the district that [the teacher] had known of the date of the hearing for some time prior to the notice being sent, the commission determined that the date of the hearing should be continued." (55 Cal.App.3d at p. 160.) Although the opinion does

not expressly say so, the commission apparently continued the hearing to a date more than 60 days after the teacher had made her demand for a hearing, and apparently did so in order to give the district an opportunity to "deliver or mail" to the teacher a new section 11509, 10-day notice of the new hearing date. On the 60th day, the district asked the commission for a ruling that the teacher's hearing had actually commenced when the teacher made her "special appearance" on the originally scheduled hearing date. The commission "determined that the hearing had not commenced on that date." (55 Cal.App.3d at p. 160.) The district then petitioned the superior court for an order directing the commission to proceed with the teacher's dismissal hearing. The superior court issued the writ. It concluded that the district had complied with Government Code section 11509 and that the 60-day period for commencing the dismissal hearing was not mandatory or jurisdictional. The teacher then appealed.

The appellate court in *Governing Board* agreed with the trial court that Government Code section 11509 had been satisfied notwithstanding the incorrect suite number and the inadequate postage. "[T]here is compliance with the statute when the notice is deposited in the mail and reaches the teacher as effectively and speedily as one correctly addressed with adequate postage." (55 Cal.App.3d at p. 164.) The appellate court disagreed, however, with the superior court's conclusion that the time limitation for commencement of the dismissal hearing (then found in former § 13413 and today found in § 44944, subd. (a)) was not mandatory or jurisdictional. The *Governing Board* court quoted *Reeves*'s statement that " 'this time limit appears to be jurisdictional' " and added "[t]he language of *Reeves* is consistent with the pattern of the California cases." (55 Cal.App.3d at p. 162.) The *Governing Board* court held: "We thus conclude that the command of Education Code section 13413 that a hearing on the accusation against a permanent teacher must commence within 60 days of the teacher's demand for it is mandatory so that the Commission on Professional Competence cannot proceed upon the accusation unless the hearing is commenced within the statutory period or delay is excused." (55 Cal.App.3d at p. 163.) The *Governing Board* opinion contains no explanation of the source of its "or delay is excused" language. The opinion merely goes on to state "[t]here remains the issue of whether the delay in the case at bench was excusable" (55 Cal.App.3d at p. 163), but then never explicitly addresses that issue. Because the opinion addresses the 60-day limit issue first and then addresses the Government Code section 11509 issue, it appears that the court may have impliedly concluded that the delay beyond the 60 days was "excusable" because the district's compliance with Government Code section 11509 meant that the commission had erred in continuing the hearing from its original, timely hearing date. In other words the commission, and not the district, was

responsible for the delay because the commission erroneously granted a continuance and did so over the objection of the district.

In sum, neither *Reeves* v. *Superior Court, supra,* 36 Cal.App.3d 291, nor *Governing Board* v. *Felt, supra,* 55 Cal.App.3d 156, addresses the issue of whether the parties may stipulate to the commencement of a dismissal hearing. That issue is controlled by *Powers* v. *Commission on Professional Competence, supra,* 157 Cal.App.3d 560, and the superior court was correct in concluding that the parties properly could do so and that they did do so.

## II.-VII.*

. . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. Costs to the district.

Vartabedian, J., and Harris, J., concurred.

A petition for a rehearing was denied July 14, 1998, and appellant's petition for review by the Supreme Court was denied September 30, 1998.

---

*See footnote, *ante,* page 1130.