Filed 12/14/15  Rodriguez v. Commission on Professional Competence CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JESUS RODRIGUEZ, | B258035 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BS143435) |
| v. | |
| COMMISSION ON PROFESSIONAL COMPETENCE OF THE LOS ANGELES UNIFIED SCHOOL DISTRICT, | |
| Defendant; | |
| LOS ANGELES UNIFIED SCHOOL DISTRICT, | |
| Real Party in Interest and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Luis Lavin, Judge.  Affirmed.

Bergman Dacey Goldsmith, Gregory M. Bergman, Michele M. Goldsmith and Mark W. Waterman for Real Party in Interest and Appellant Los Angeles Unified School District.

Trygstad, Schwab & Trygstad, Lawrence B. Trygstad and Richard J. Schwab for Plaintiff and Respondent Jesus Rodriguez.

Jesus Rodriguez, a teacher with the Los Angeles Unified School District (District) for 24 years, pleaded no contest to misdemeanor disturbing the peace after he exposed his penis to an undercover officer in Elysian Park. After the District's Commission on Professional Competence (Commission) found Rodriguez unfit to teach and authorized termination of his employment, Rodriguez filed a petition for a writ of mandate to set aside the decision. The superior court, based on its evaluation of the factors set forth in *Morrison v. State Board of Education* (1969) 1 Cal.3d 214 (*Morrison*), granted the petition, holding the weight of the evidence did not support the Commission's determination that Rodriguez was unfit to teach. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Incident; the No Contest Plea*

On September 1, 2010 Los Angeles Police Officers Damien Hernandez and Christopher Jarvis were working undercover in Elysian Park in response to numerous complaints about "lone males engaging in lewd activity." According to the arrest report, on a hiking trail just north of Park Row Drive Rodriguez walked 20 feet past Hernandez, exposed his penis by pulling the bottom of his shorts to the side and, while masturbating, gestured with a nod of his head for Hernandez to follow him. The officers arrested Rodriguez. He was charged with publicly engaging in lewd conduct (Pen. Code, § 647, subd. (a)).

Rodriguez, who had been assigned to teach gifted fourth-grade students during the upcoming school year at Pacific Boulevard School, was reassigned to the local district office.[1] On October 5, 2010 Rodriguez was placed on compulsory unpaid leave, and his teaching credentials were suspended as required by Education Code section 44940 when a teacher is charged with violating Penal Code section 647, subdivision (a).

On October 26, 2010 the misdemeanor complaint filed against Rodriguez was amended to allege a new count for disturbing the peace (Pen. Code, § 415). Rodriguez

---

[1] Pacific Boulevard School is located in local district 6. Employees assigned to a local district office must report to the office for the hours they would ordinarily keep at the school site.

pleaded no contest to that charge and was placed on summary probation for two years. The lewd conduct charge was dismissed. On January 15, 2013 Rodriguez's motion to expunge his conviction was granted. (See Pen. Code, §§ 1203.4, 1203.4a.)

2. *The Committee of Credentials' Investigation; the Accusation and Statement of Charges*

On December 8, 2010, after the lewd conduct charge had been dismissed, Rodriguez's credentials were reinstated; and the matter was referred to the District's Committee of Credentials for a determination whether Rodriguez's conduct warranted administrative disciplinary action. Although the Pacific Boulevard School's principal, Gabriel Duran, and vice principal, Herlinda Ducreux, had recommended in February 2011 that Rodriguez be reassigned to teach the fourth-grade gifted class notwithstanding the lewd conduct charge,[2] he continued to be assigned to the local district office. In May 2011 Robert Hinojosa, a principal leader with local district 6, held a "*Skelly* meeting" with Rodriguez during which Rodriguez was permitted to respond to the allegations of misconduct. (See *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194.) Subsequently, Hinojosa recommended Rodriguez be dismissed from employment.

In February 2012 Rodriguez was given notice of the District's intention to dismiss him, and he was suspended without pay. On March 9, 2012 the District filed an accusation and statement of charges with the Commission, seeking to dismiss Rodriguez on grounds of immoral conduct, unprofessional conduct and evident unfitness for service. (Ed. Code, §§ 44932, 44939.) In June 2012, however, the Committee of Credentials,

---

[2]    In a letter dated February 4, 2011 Duran and Ducreux stated, "Based on our direct observations of classroom lessons and working with his grade level colleagues, we have found Mr. Rodriguez to be knowledgeable and insightful on teaching techniques and state standards. He is always open to suggestions and is always collaborating with colleagues to build a strong school wide instructional program. We found him to be very skilled in communicating and interacting with parents, colleagues, and school support personnel through professional development and school wide committees. [¶] It is our opinion that Mr. Rodriguez possesses positive personal and professional teaching qualities that merit that he be given the opportunity to work in our school community." Duran and Ducreux also stated, "At no time have we witnessed any improprieties in his behavior with staff or students."

3

"after careful review and consideration of the materials contained in [Rodriguez's] file, . . . determined to close its investigation and to recommend no adverse action at this time."

      3. *The Hearing Before the Commission*

         a. *Witness testimony*

Notwithstanding the Committee of Credentials' recommendation no adverse action be taken against Rodriguez, a five-day hearing before the Commission commenced in January 2013. Rodriguez testified he had gone running in Elysian Park on the day of his arrest after spending time in the classroom working on the lesson plan for the upcoming year. While walking back to his car, he veered onto a trail to find a location concealed by shrubbery to urinate. Rodriguez passed Hernandez, who was walking toward him. Rodriguez walked a little further to a spot with sufficient foliage and exposed his penis to urinate. As he was standing there, Rodriguez saw Hernandez staring at him from about eight feet away. Rodriguez was attracted to Hernandez and thought Hernandez was "flirting" with him. When Hernandez began walking toward Rodriguez, Rodriguez "tucked [himself] away slowly" and walked toward Hernandez.[3] Hernandez and his partner then arrested Rodriguez. Rodriguez had condoms and a packet of lubricant in his pocket. He testified they had been in his car for a long time and he intended to throw them away in a park trash can.

Officer Hernandez testified the incident occurred as generally described in the arrest report he had written: He was standing on a hiking trail when he saw Rodriguez walking toward him and touching his erect penis, which was sticking out of the bottom of his shorts. Rodriguez walked past Hernandez to a clearing, took his penis out of his shorts, began masturbating and nodded at Hernandez to come to him. Hernandez

---

3     Rodriguez recounted a somewhat different description of the incident in response to a special interrogatory by the District. Denying he touched his exposed penis, Rodriguez contended he had stopped to watch Hernandez and a man who was undressing because he was curious what would happen. Rodriguez looked away a few times, but each time he looked back Hernandez was staring intently at him. Hernandez began walking toward Rodriguez, and Rodriguez "responded in kind."

4

testified he identified himself as a police officer and arrested Rodriguez, who apologized. Rodriguez was not sweating and did not appear to have just finished running, nor did he mention needing to urinate. The clearing was visible to Park Row Drive, about 200 feet below. Officer Jarvis testified he did not witness the misconduct.

Duran testified he received a call from the Los Angeles County jail to confirm Rodriguez was a District employee and to inquire if he was a flight risk. Duran was later told by District personnel that Rodriguez had been arrested for soliciting a prostitute and charged with committing a lewd act. Duran did not find out until after he wrote the February 4, 2011 letter recommending Rodriguez be reassigned to the classroom that Rodriguez had allegedly solicited an undercover officer while masturbating in Elysian Park. Knowing the factual allegations underlying the lewd conduct charge, Duran did not think Rodriguez should be returned to the classroom and agreed with the decision to terminate him. Duran in part explained he believed parents would ask that their children to be transferred to a different classroom if they learned the nature of the lewd conduct charge against Rodriguez.

Natividad Rozsa, a principal leader/director for local district 6 in September 2010 and Duran's supervisor, testified she had recommended Rodriguez be dismissed because it was her "personal belief" children would not be safe around Rodriguez. She described Rodriguez's conduct, as described in the arrest report, as "an egregious act, poor judgment, immoral conduct." Hinojosa, who was lateral to and shared the workload with Rozsa, testified he had decided to recommend that Rodriguez be dismissed from employment after the *Skelly* meeting because Rodriguez did not present any information suggesting other discipline was warranted; Hinojosa did not want to "bear legal and moral responsibility" if he recommended Rodriguez be returned to the classroom and "something were to happen similar."

Similarly, Rowena Lagrosa, the superintendent for local district 6 at the time of the incident, testified she felt very strongly Rodriguez should be dismissed because his conduct "reflected for me a lack of good judgment, self control, and integrity, and a breach of trust." Although she had no evidence a person who masturbated in a park

5

would pose any safety danger to students, she was not "willing to risk even the possibility of that occurring or something similar occurring within a classroom setting or a school setting" by "one who would exercise such a lack of judgment to do so in a public park setting where there are families." She further testified she did "not have confidence that [the conduct] would not occur again" because it was "criminal and deviant behavior" and Rodriguez's failure to even admit it had occurred reflected "[a] lack of taking responsibility for one's unprofessional conduct." She believed students and parents would be distraught if they learned of the incident and hold her accountable for possibly putting their children at risk. Lagrosa acknowledged, however, she did not know of any parents or students who were aware that any misconduct had occurred.

Grace Ollerenshaw, a teacher at Pacific Boulevard School and Rodriguez's friend, testified she was the union representative who went with Rodriguez to a meeting with Duran on March 9, 2011. She described Rodriguez as an "amazing teacher" who was very passionate about his job. Although Ollerenshaw, who is also a runner, had initially believed Rodriguez's story he urgently needed to urinate after his run, she had a difficult time believing it after she read the police report. She testified, given the lapse of judgment Rodriguez had demonstrated, she would be concerned if he were returned to the classroom. She told one other teacher about the acts described in the police report. She was not certain if Rodriguez's other friends at the school, who were teachers, just knew Rodriguez had been arrested or knew additional details, either as described by Officer Hernandez or by Rodriguez.

b. *The Commission's decision*

The Commission sustained the accusations against Rodriguez and concluded there was cause to dismiss him. Finding Officer Hernandez's testimony and written report more credible than Rodriguez's testimony, the Commission in part found Rodriguez had been masturbating in a public area visible from Park Row Drive when he gestured to

6

Hernandez. With respect to the *Morrison* factors,[4] the Commission found, although there was no actual adverse effect on students, several District witnesses "established that [Rodriguez] could not function as an effective role model for students"; "[t]here was evidence that parents would be adversely affected, and it was clear District administrators were as well"; District witnesses testified that, given the poor judgment Rodriguez displayed, he "could not be trusted in a classroom to exercise the judgment necessary under his responsibility to properly interact with his young students"; and, although Rodriguez's desire to "make a social connection" was praiseworthy, "[b]lameworthy circumstances are that he did so in a highly inappropriate manner by exposing his erect penis, and masturbating for self-gratification, in a public park, exhibiting an extreme lack of both good judgment and situational awareness." The Commission also found it significant that Rodriguez remained steadfast his only mistake was exposing his penis to urinate and did not take responsibility for the acts the Commission found had actually occurred.

3. *Rodriguez's Successful Petition for Writ of Mandate*

On July 3, 2013 Rodriguez petitioned the superior court for a writ of mandate to set aside his termination. A hearing on the petition was held on May 1, 2014. On May 23, 2014 the court filed its decision and order granting the petition and issuing a writ of mandate compelling the Commission to set aside its decision.

The court, exercising its independent judgment on the evidence in the administrative record, agreed with the Commission there were inconsistencies in Rodriguez's testimony raising questions about his credibility. However, unlike the Commission, the court found Officer Hernandez's credibility was questionable and "recollection of what transpired . . . highly suspect." The court explained, "Hernandez exhibited bias or prejudice against [Rodriguez] because of his sexual orientation," shown

---

4    As discussed in more detail below, the *Morrison* factors include the likelihood the conduct may have adversely affected students or teachers, the likelihood the conduct will reoccur and any extenuating or aggravating circumstances. (*Morrison*, *supra*, 1 Cal.3d at p. 229.)

by Hernandez asking Rodriquez whether he had AIDS and making exaggerated statements in the arrest report, which the court described as "reflect[ing] outdated stereotypes and a strong moral disapproval of homosexuality."[5]  The court further found "given the passage of time between [Rodriguez's] arrest in September 2010, and Officer Hernandez's testimony in January 2013, it is simply not believable that Officer Hernandez would remember details such as whether [Rodriguez] was sweating and whether [Rodriguez's] penis was erect and for how long. . . .  And while the [District] has seized on the fact that [Rodriguez] admitted that he had condoms and lubricant with him when he was arrested Officer Hernandez's own police report states that no evidence was taken from [Rodriguez].  [Citation.]  Officer Hernandez's failure to mention crucial evidence, the condoms and lubricant, in his police report calls into question the accuracy of the statements in that report and may explain why [Rodriguez] was charged but not prosecuted for lewd conduct."

Following in part from these credibility determinations, the court found, although the weight of the evidence established Rodriguez had exposed his penis to Officer Hernandez and touched it for about 20 seconds, it did not support the Commission's findings Rodriguez had masturbated or that this conduct was visible from Park Row Drive, 200 feet away and obscured by brushes, shrubs and trees.  With respect to the *Morrison* factors the court found, "The weight of the evidence does not support a finding that [Rodriguez's] act of exposing his penis for 20 seconds . . . to an undercover police officer who [Rodriguez] thought was sexually interested in him adversely affected other teachers and students at Pacific Boulevard Elementary.  The District . . . called no

---

5     Noting Elysian Park was used by families with children, the arrest report stated, "These families and their children should not be exposed to the Lewd Acts committed by Rodriguez and other males.  A child observing such a Lewd Act could scar a child emotionally for a lifetime.  This would leave families no other alternative but to leave the City of Los Angeles and move to other communities and cities."  Officer Hernandez testified these statements were included in support of an application for a stay-away order, which the officers had requested because lewd acts in the park were "a big problem" and they "wanted to control it as much" as possible.

medical, psychological, or psychiatric experts to testify as to whether a man who had had a single, isolated, and limited encounter with one person would be likely to repeat such conduct in the future.  The District also offered no evidence that a man of [Rodriguez's] background was any more likely than the average adult male to engage in any untoward conduct with a student, teacher, or [District] employee."  The court did not give any weight to the District witnesses' opinions Rodriguez's conduct rendered him unfit to teach because their personal opinions were not supported by evidence.

The court further found factors weighing against dismissing Rodriguez were the remoteness in time of the conduct to the dismissal (three and one-half years) and Rodriguez's multi-subject teaching credential, which would permit him to teach at more than 400 other schools in the District to the extent his misconduct was sufficiently notorious at Pacific Boulevard School to justify a transfer or reassignment notwithstanding "[a]t most, . . . a handful of teachers" at Pacific Boulevard School had limited knowledge of Rodriguez's arrest.  The court described the dismissal as one based on an "'unfitness per se' rule based on an allegation that was dismissed and never prosecuted.  This was improper.  Moral disapproval, by itself, of [Rodriguez's] actions is not a sufficient reason to deem him a threat to students, teachers, or administrators."

**DISCUSSION**

1.  *Standard of Review*

The Commission's role is to determine whether the charged conduct occurred and "whether that conduct—measured against the *Morrison* criteria [citation]—demonstrates unfitness to teach . . . ."  (*Fontana Unified School Dist. v. Burman* (1988) 45 Cal.3d 208, 220.)  Its decision "may be challenged in superior court by means of a petition for a writ of mandate."  (*Pasadena Unified School Dist. v. Commission on Professional Competence* (1977) 20 Cal.3d 309, 313-314.)  "In reviewing a commission's decision, the superior court 'shall exercise its independent judgment on the evidence.'  ([Ed. Code,] § 44945.)"  (*Pasadena Unified School Dist.*, at p. 314.)  Independent judgment review requires the superior court to determine whether the weight of the evidence supports the administrative agency's findings.  (Code Civ. Proc., § 1094.5, subd. (c); *Strumsky v. San*

9

*Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 31 [Code Civ. Proc., § 1094, subd. (c), "provides that when a claim of unsupported findings is made, abuse of discretion (which under subdivision (b) is established if the findings are not supported by the evidence) is shown *in cases in which the court is authorized by law to exercise its independent judgment on the evidence* if the court determines that the findings are not supported by the *weight* of the evidence"].)

The superior court's exercise of its independent judgment is not unfettered. "[A] trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817 (*Fukuda*); see *Alberda v. Board of Retirement of Fresno County Employees' Retirement Assn.* (2013) 214 Cal.App.4th 426, 433 (*Alberda*) [petitioner has the burden of showing "the decision was not supported by the preponderance of the evidence"].) This presumption of correctness includes giving great weight to the agency's credibility determinations. (*Fukuda*, at p. 819.) Nevertheless, the presumption is only "a starting point for review . . . and may be overcome. Because the trial court ultimately must exercise its own independent judgment, that court is free to substitute its own findings after first giving due respect to the agency's findings." (*Id.* at p. 818; see *Alberda*, at p. 433 ["'[w]hen applying the independent judgment test, the trial court may reweigh the evidence and substitute its own findings for those of the [agency], after first giving due respect to the [agency]'s findings'"].) The superior court is also "free to make its own determination of the credibility of witnesses in the process . . . ." (*Pittsburgh Unified School Dist. v. Commission on Professional Competence* (1983) 146 Cal.App.3d 964, 977; see *Alberda*, at p. 433; *Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652, 658 ["in exercising its independent judgment 'the trial court has the power and responsibility to weigh the evidence at the administrative hearing *and to make its own determination of the credibility of witnesses*'"].) As a matter of public policy, when administrative decisions are subject to the independent judgment standard of review, "the responsibility to make

factual determinations is left with the trial court rather than with the administrative agency." (*San Dieguito Union High School Dist. v. Commission on Professional Competence* (1985) 174 Cal.App.3d 1176, 1180; see *Rand v. Board of Psychology* (2012) 206 Cal.App.4th 565, 591 ["[b]ecause of the importance of rights affected by administrative adjudications subject to the independent judgment test of review, "'. . . California fixes responsibility for factual determination at the trial court rather than the administrative agency tier of the pyramid as a matter of public policy"'"].)

Following the superior court's independent review of the record, the scope of review on appeal is limited. (*Pasadena Unified School Dist. v. Commission on Professional Competence*, *supra*, 20 Cal.3d at p. 314; *San Dieguito Union High School Dist. v. Commission on Professional Competence*, *supra*, 174 Cal.App.3d at p. 1180.) "Our task is to determine whether substantial evidence in the administrative record supports the trial court's ruling [citation], except when the appellate issue" includes questions of law, which we review de novo. (*Alberda*, *supra*, 214 Cal.App.4th at p. 830; see *Fukuda*, *supra*, 20 Cal.4th at p. 824 ["[e]ven when . . . the trial court is required to review an administrative decision under the independent judgment standard of review, the standard of review on appeal of the trial court's determination is the substantial evidence test"]; see also *Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 ["[a]fter the trial court has exercised its independent judgment upon the weight of the evidence, an appellate court need only review the record to determine whether the trial court's findings are supported by substantial evidence"].)[6] "In reviewing the evidence, an appellate court must resolve all conflicts in favor of the party prevailing in the superior court and must give that party the benefit of every reasonable inference in support of the judgment. When more than one inference can be reasonably deduced from the facts, the appellate

---

[6] "'Substantial evidence' is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. [Citation.] It is sufficient "'if any reasonable trier of fact could have considered it reasonable, credible and of solid value.'"" (*San Diego Unified School Dist. v. Commission on Professional Competence* (2013) 214 Cal.App.4th 1120, 1143.)

11

court cannot substitute its deductions for those of the superior court." (*Pasadena Unified School Dist.*, at p. 314.) "If appellate scrutiny reveals that substantial evidence supports the trial court's findings and conclusions, the judgment must be affirmed." (*Board of Education v. Jack M.* (1977) 19 Cal.3d 691, 697 (*Jack M.*); *San Diego Unified School Dist. v. Commission on Professional Competence* (2013) 214 Cal.App.4th 1120, 1142 ["'[o]ur inquiry "begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact"'''].)[7]

When, as here, the superior court has independently reviewed the administrative record and ruled the weight of the evidence fails to support the administrative agency's order, our "substantial evidence" review of that conclusion is, in practice, akin to appellate review in civil failure-of-proof cases: If the evidence in the administrative record compels a finding in favor of the agency as a matter of law, we must reverse. (Cf. *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838 ["where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law"]; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1527-1528

---

[7] While the Supreme Court has not unequivocally stated fitness to teach is a question of fact, it has strongly suggested it is; and we decline to depart from the myriad cases that apply a substantial evidence standard of review to the question. In *Jack M.* the Court explained, the *Morrison* Court "did not resolve whether 'fitness' was an issue of ultimate fact or one of law. [Citation.] Later Court of Appeal decisions, however, classify fitness as a question of ultimate fact. . . . [¶] In theory, a determination is one of ultimate fact if it can be reached by logical reasoning from the evidence, but one of law if it can be reached only by the application of legal principles. [Citations.] Under this analysis, fitness to teach is probably a question of ultimate fact. Although resort to legal principles is necessary to establish that fitness to teach, instead of immorality or moral turpitude, is the crucial issue, the determination of fitness to teach flows from the evidence itself without further resort to legal principles." (*Jack M.*, *supra*, 19 Cal.3d at p. 698, fn. 3; see *Board of Education v. Commission on Professional Competence* (1980) 102 Cal.App.3d 555, 561 ["[w]e determine, after a careful and diligent review of the record, that it contains substantial evidence to support the *ultimate* finding of the trier of fact" that teacher should be not be terminated].)

[same].)  The question "'becomes whether the . . . evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'"  (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.)  However, if there is substantial evidence on both sides of the factual issues or a complete absence of evidence, we will affirm the superior court.  (See *Morrison*, *supra*, 1 Cal.3d at p. 236 [judgment of superior court denying teacher's request for writ of mandate reversed; as to crucial issue whether teacher was unfit to teach, "the record before the board and before this court contains no evidence whatsoever"].)

  2.  *Governing Law*

  Education Code section 44932 provides several grounds for dismissal of a permanent employee of a public school district including "[i]mmoral or unprofessional conduct" (subdivision (a)(1)) and "[e]vident unfitness for service" (subdivision (a)(5)).  However, the Supreme Court has held "the determinative test [is] fitness to teach" because "the terms 'immoral' or 'unprofessional conduct' are so broad and vague that, standing alone, they could be constitutionally infirm."  (*Jack M.*, *supra*, 19 Cal.3d at p. 696.)  The terms "stretch over so wide a range that they embrace an unlimited area of conduct.  In using them the Legislature surely did not mean to endow the employing agency with the power to dismiss any employee whose personal, private conduct incurred its disapproval.  Hence the courts have consistently related the terms to the issue whether, when applied to the performance of the employee in the job, the employee has disqualified himself."  (*Morrison*, *supra*, 1 Cal.3d at pp. 224-225.)

  In *Morrison* the Court identified several factors to be considered in determining whether a teacher's conduct "indicates unfitness to teach":  "the likelihood that the conduct may have adversely affected students or fellow teachers, the degree of such adversity anticipated, the proximity or remoteness in time of the conduct, the type of teaching certificate held by the party involved, the extenuating or aggravating circumstances, if any, surrounding the conduct, the praiseworthiness or blameworthiness of the motives resulting in the conduct, the likelihood of the recurrence of the questioned

13

conduct, and the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers." (*Morrison, supra*, 1 Cal.3d at p. 229, fns. omitted.) Because "[n]o person can be denied government employment because of factors unconnected with the responsibilities of that employment" (*id.* at p. 234), these factors ensure a "nexus" between the teacher's misconduct and an unfitness-to-teach determination. (See *id.* at p. 227 ["[t]hat the meaning of 'immoral,' 'unprofessional,' and 'moral turpitude' must depend upon, and thus relate to, the occupation involved finds further confirmation in the fact that those terms are used in a wide variety of contexts"]; *San Diego Unified School Dist. v. Commission on Professional Competence* (2011) 194 Cal.App.4th 1454, 1463 ["*Morrison* requires a nexus between government employment and alleged employee misconduct"]; accord, *San Diego Unified School Dist. v. Commission on Professional Competence, supra*, 214 Cal.App.4th at p. 1143; see also Cal. Code Regs., tit. 5, § 80302, subd. (a) [listing factors Committee of Credentials should consider in determining whether "the relationship between the alleged misconduct and the applicant's or holder's fitness, competence or ability to effectively perform the duties authorized by the credential"].)

3. *The Superior Court Did Not Err in Concluding the District Presented Insufficient Evidence Rodriguez Was Unfit To Teach*

a. *Deference to the agency's findings does not mean agreement with them*

As a threshold matter, the District contends the superior court did not give the requisite deference to the Commission's findings and credibility determinations. The presumption of correctness of an agency's findings, however, does not require the court to agree with the agency, nor can adherence to the presumption be measured in a binary fashion. Because "'the exact effect of this presumption is impossible to estimate,'" it "'*has the effect of an admonition to the court and of casting the burden of proof upon the person seeking to overthrow the administrative action.*'" (*Fukuda, supra*, 20 Cal.4th at p. 815.) Thus, "the presumption is rebuttable and may be overcome by the evidence." (*Alberda, supra*, 214 Cal.App.4th at p. 433.) Absent an express statement that the court

14

is not recognizing the presumption or from which such a failure can be inferred, determining whether the court erred in this regard must be resolved by determining whether the court's factual findings are reasonable in light of the entire record. Here, the District has failed to cite anything in the record suggesting the court did not give great weight to the Commission's credibility determinations or other factual findings. (Cf. *Alberda*, at p. 434 [although superior court's written order began with correct statement of independent judgment standard of review, balance of order demonstrated court erroneously applied substantial evidence standard].) To the contrary, before explaining the basis for its conclusion Officer Hernandez's credibility was questionable, the court fully articulated the applicable standard of review. Its analysis was faithful to that standard, for example, finding statements by Hernandez in the arrest report and during his testimony revealed a bias against Rodriguez because of Rodriguez's perceived sexual orientation.

Citing *Fukuda*, *supra*, 20 Cal.4th 805, the District also contends the court erred by focusing on the District's burden of proof at the administrative level rather than on Rodriguez's burden to prove the administrative findings were contrary to the weight of the evidence: In explaining its finding the weight of the evidence did not support the Commission's finding that Rodriguez's conduct had adversely affected students and teachers, the court stated, "The District, which had the burden of proof at the administrative hearing, called no medical, psychological, or psychiatric experts to testify as to whether a man who had had a single isolated, and limited encounter with one person would be likely to repeat such conduct in the future." This single reference to the District's burden of proof at the administrative hearing was an accurate statement of the law. It is hard to imagine how the court could not mention it when the basis for its ruling was an absence of evidence. The court did not, as had the superior court in *Fukuda*, improperly place the burden of proof on the party defending the agency's findings (*id.* at p. 810).

Finally, in asserting the court did not afford the agency's decision to terminate Rodriguez's employment the appropriate deference, the District cites authority for the

well-established propositions that public policy mandates teachers be held to high standards of conduct (see, e.g., *Governing Board v. Metcalf* (1974) 36 Cal.App.3d 546, 550-551; Ed. Code, § 233.5, subd. (a)) and that the disciplinary decisions of educational professionals, like those of other administrative agencies, should not be set aside absent a manifest abuse of discretion. (See, e.g., *Barber v. State Personnel Bd.* (1976) 18 Cal.3d 395, 404.) Nevertheless, because the factual basis for the District's penalty decision—that Rodriguez was unfit to teach—was properly set aside by the superior court, the District's decision to terminate his employment was necessarily an abuse of discretion. Notwithstanding "the public interest in the elimination of unfit elementary and secondary school teachers," a teacher "is entitled to a careful and reasoned inquiry into his fitness to teach . . . before he is deprived of the right to pursue his profession." (*Morrison*, *supra*, 1 Cal.3d at pp. 238-239.)

> b. *Substantial evidence supports the superior court's finding Rodriguez's conduct was not visible to Park Row Drive*

Central to the District's evaluation of Rodriguez's fitness to teach was its finding, by a vote of two-to-one, that Rodriguez had exposed his penis, masturbated and gestured to Officer Hernandez "while in a public area visible from Park Row Drive." The superior court rejected those findings, concluding, "The weight of the evidence does not support a finding that [Rodriguez's] penis was visible from Park Row Drive." Substantial evidence supports the court's assessment: The evidence established Park Row Drive was at least 200 feet away from where Rodriguez exposed himself; and, as the court's opinion stated, "Officer Jarvis testified that the trails where [Rodriguez] was arrested contained so many brushes and shrubs that 'you might not be able to see the person [on the] 'next' [trail]. [Citation.] Even Officer Hernandez conceded that there were bushes and trees between Park [Row] Drive and the arrest area, and that no one was around or had complained about [Rodriguez's] behavior."[8]

---

8 The court also observed the District "never established a foundation for Officer Hernandez's statement in the 2010 police report concerning the line of sight from Park [Row] Drive to the area where [Rodriguez] was arrested."

16

The District argues the Commission did not find Rodriguez's penis itself was visible from Park Row Drive, but merely that Rodriguez was in a location visible to the public when he committed the acts at issue. The Commission's decision is not so limited. The Commission found not only that the area where Rodriguez committed the acts was visible from Park Row Drive but also (albeit by a divided vote) that his specific actions were visible.[9] An area may be considered "public" because it is not private property and generally visible from several hundred feet away, but the court was permitted to take into consideration a more refined analysis as to the location of Rodriguez's misconduct in determining his fitness to teach. (See *Pryor v. Municipal Court* (1979) 25 Cal.3d 238, 256 ["even if conduct occurs in a location that is technically a public place, a place open to the public, or one exposed to public view, the state has little interest in prohibiting that conduct if there are no persons present who may be offended"; thus, "[t]he scope of section 647, subdivision (a), should be limited accordingly"]; *Pettit v. State Board of Education* (1973) 10 Cal.3d 29, 34-35 ["in *Morrison* the conduct at issue occurred entirely *in private* and involved only two persons, whereas plaintiff's indiscretions involved three different 'partners,' were witnessed by several strangers, and took place in the semi-public atmosphere of a club party"].)

> c. *The superior court did not misinterpret the* Morrison *factors or improperly conclude the District had erred in finding Rodriguez unfit to teach*

The District contends the trial court misinterpreted several *Morrison* factors and, as a result, improperly overturned its determination Rodriguez was not fit to teach. Primarily the District argues the court unduly limited its analysis of the adverse effects from Rodriguez's conduct to whether Rodriguez would in the future engage in improper physical conduct or relationships with individuals on campus and whether students or teachers were currently aware of the conduct. The District contends, properly applied, the factor also encompasses the degree of adversity anticipated if Rodriguez were to

---

[9] Whether Rodriguez's penis itself was visible or only his alleged act of masturbating is a meaningless distinction.

17

return to the classroom and various stakeholders thereafter learned the details of his misconduct.  (See *Morrison*, *supra*, 1 Cal.3d at p. 229 [factors include the "degree of such adversity anticipated"]; *Comings v. State Board of Education* (1972) 23 Cal.App.3d 94, 104 [evidence of unfitness to teach "may include evidence that [the teacher's] conduct indicates a potential for adverse school relationships in the future, or has achieved such notoriety as to impair those in which [the teacher] is already involved"].)

The District misconceives the purpose of the *Morrison* factors, which are not inflexible rules with definable boundaries, but broad classes of issues to be considered to assist "in determining whether the teacher's future classroom performance and overall impact on his students are likely to meet [State Board of Education] standards." (*Morrison*, *supra*, 1 Cal.3d at p. 230.)  In evaluating whether a teacher's past conduct may pose a significant danger to the school community, courts have the discretion to consider only the "most pertinent" of the enumerated factors.  (*West Valley-Mission Community College Dist. v. Concepcion* (1993) 16 Cal.App.4th 1766, 1777.)  Even the *Morrison* Court itself, in analyzing whether Morrison was fit to teach, did not focus on several of the key factors.  Thus, in holding the record contained no evidence Morrison's week-long, consensual physical relationship with another man rendered him unfit to teach, the Court analyzed whether "his retention in the profession poses a significant danger of harm to either students, school employees, or others who might be affected by his actions as a teacher."  In doing so, the court "inquir[ed] whether any adverse inferences can be drawn from that past conduct as to petitioner's teaching ability, or as to the possibility that publicity surrounding past conduct may in and of itself substantially impair his function as a teacher."  (*Morrison*, at pp. 235, 236.)

Here, substantial evidence supports the court's finding only a handful of administrators and teachers had limited knowledge of the basis for Rodriguez's arrest and thus his conduct had not "gained sufficient notoriety so as to impair his on-campus relationships." (*Board of Trustees v. Stubblefield* (1971) 16 Cal.App.3d 820, 826; see *Jack M.*, *supra*, 19 Cal.3d at p. 701, fn. 5 ["[a]lthough . . . *Morrison* did not mention the notoriety and publicity accorded a teacher's conduct as a consideration bearing on fitness,

18

*Morrison* mentioned the absence of notoriety as one ground for its conclusion that the record did not demonstrate teaching unfitness; other decisions have confirmed the relevance of this consideration"].)  There was no evidence other teachers or students would ever learn of Rodriguez's conduct, occurring several years earlier and for which his conviction of disturbing the peace had been expunged.  The District witnesses' testimony about what parents might do if they were to learn of the conduct was entirely speculative and of limited value.

      *Morrison* and the instant matter are comparable in several significant respects. Like Rodriguez, Morrison's performance as a teacher and his conduct outside the classroom had never been criticized.  In each case termination (or revocation of teaching diplomas in *Morrison*) occurred approximately three years after the misconduct occurred. (*Morrison*, *supra*, 1 Cal.3d at pp. 218, 237.)  And in both cases there was no expert testimony the teachers' one-time misconduct was of such a nature, or that anything in their backgrounds suggested, it was likely to recur or that students might be at risk of harm.  It was entirely appropriate on this record for the court not to give any weight to the District witnesses' opinions Rodriguez's conduct indicated such an extraordinary lapse of judgment he could not be trusted in the classroom.  As the court aptly explained, "Worries, fears, or concerns, however, are not a substitute for substantial evidence that [Rodriguez] would pose any harm to anyone if he was allowed to return to teaching."  Indeed, the court found some of the District witnesses' opinions were based on factual errors—for example, that Rodriguez was masturbating or his actions could be seen from Park Row Drive.[10]  The District witnesses were not asked whether Rodriguez should be returned to the classroom based on the facts as found by the superior court.  Inasmuch as Duran had recommended Rodriguez be returned to the classroom when he believed Rodriguez had been arrested for soliciting a prostitute, he might well have expressed the

---

10    For example, Lagrosa testified that, in deciding to recommend dismissal, she believed Rodriguez had been observed masturbating within viewing distance of anyone on Park Row Drive, as had been described in the police report.

same opinion had he known the facts as found by the court, which suggested a scenario more akin to the one-on-one solicitation of a prostitute than publicly masturbating.

To be sure, there are distinctions between the two cases. In *Morrison* the "misconduct" was a week-long, consensual sexual relationship between two men occurring entirely in private—not misconduct at all by today's standards—and here Rodriguez, arrested for lewd conduct, had exposed himself to a man he believed was flirting with him in a park where such conduct was reportedly "a big problem." But the fact that Rodriguez had been charged with lewd conduct or pleaded no contest to disturbing the peace is not in and of itself a sufficient basis for a determination he was unfit to teach. Rather, it is simply a consideration. (See *Jack M.*, *supra*, 19 Cal.3d at p. 702, fn. 6 ["[p]roof of the commission of a criminal act does not alone demonstrate the unfitness of the teacher, but is simply one of the factors to be considered"].) In sum, the superior court in the instant matter understood the law, evaluated the credibility of the witnesses and considered the facts in concluding the District had failed to carry its burden of demonstrating Rodriguez was unfit to teach. We find no basis to rule the court's legal reasoning was flawed, or its conclusions unreasonable.

**DISPOSTION**

The judgment is affirmed.


PERLUSS, P. J.


We concur:


ZELON, J.


SEGAL, J.

20